OPINION
Lee D. Williams, defendant-appellant, appeals his convictions entered upon a jury verdict in the Franklin County Court of Common Pleas. Appellant was found guilty of two counts of kidnapping, a violation of R.C. 2905.01, and three counts of rape, a violation of R.C. 2907.02.
On March 3, 2001, a grand jury indicted appellant on three counts of kidnapping and five counts of rape. The charges were based upon allegations of appellant's former girlfriend, Kimberly. Kimberly claimed that: (1) on either January 9 or 10, 2000, appellant had vaginal intercourse with her by force or threat of force; (2) sometime between May and September 2000, appellant twice had vaginal intercourse with her by force or threat of force; and (3) on September 20, 2000, appellant had vaginal intercourse and engaged in cunnilingus with her by force or threat of force. Appellant was also indicted for two counts of rape and two counts of burglary based upon similar allegations from another former girlfriend named Amanda.
In October 2001, appellant was tried by a jury for the crimes committed against Kimberly and Amanda as alleged in the two indictments. On October 19, 2001, the jury found appellant guilty of raping and kidnapping Kimberly in January 2000. The jury also found appellant guilty of committing one count of kidnapping and two counts of rape on September 20, 2000. The jury further found appellant not guilty of the remaining counts including all counts related to his conduct with Amanda. After holding a sentencing and sexual predator hearing, the trial court sentenced appellant to serve eight years in prison for each of the two kidnapping counts and eight years in prison for each of the three rape counts. The court found appellant's two kidnapping convictions should be served concurrent to each other and concurrent to his rape convictions. The court further held that appellant's three rape convictions should be served consecutively for a total of twenty-four years in prison. The court found in a separate entry that appellant was a sexual predator pursuant to R.C. 2950.09. Appellant appeals his convictions, his sentence, and the trial court's sexual predator determination, and presents the following eight assignments of error:
"[I.] The trial court erred in failing to conduct a more detailed inquiry into Appellant's claim that his counsel was not prepared for trial.
"[II.] Appellant was denied effective assistance of counsel as guaranteed under the Fifth, Sixth, and Fourteen Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution because counsel failed to timely object to the introduction of inadmissible evidence that was highly damaging and unfairly prejudicial.
"[III.] The trial court erred in imposing a term greater than the minimum period of incarceration, without making findings as required by R.C. 2929.14, upon a defendant with no prior history of imprisonment.
"[IV.] The trial court erred in imposing consecutive terms of imprisonment, in violation of R.C. 2929.14(E)(4).
"[V.] The verdict was against the manifest weight of the evidence, thereby, depriving Appellant of his due process protections under the state and federal Constitutions.
"[VI.] The trial court erred in entering judgments of conviction on two counts of kidnapping that it found merged with rape counts.
"[VII.] The trial court erred in finding Appellant to be a sexual predator.
"[VIII.] The trial court abused its discretion in ordering Appellant to pay the court costs of the case."
Appellant argues in his first assignment of error the trial court erred because it failed to conduct a more detailed inquiry into his claim that his counsel was not prepared for trial. Prior to his trial, appellant asked the court to allow him to proceed pro se claiming that his attorney had not spent enough time preparing for trial.
The Ohio Supreme Court stated the following in State v. Deal (1969),17 Ohio St.2d 17:
"Where, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, by stating that such counsel failed to file seasonably a notice of alibi or to subpoena witnesses in support thereof even though requested to do so by accused, it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record. The trial judge may then require the trial to proceed with assigned counsel participating if the complaint is not substantiated or is unreasonable." Id. at syllabus.
In the present case, appellant asked the court to allow him to proceed pro se the afternoon his trial was scheduled to begin. Appellant had been represented by appointed counsel until that time. Appellant claimed that he was better qualified to argue his case because he knew the case better than anyone else. Appellant also stated that he "had two attorneys" and "[b]oth have been very competent but very busy" and claimed that "zero hours" had been spent on his case by his attorney. Appellant contended that he thought "there are witnesses to be subpoenaed * * * some records that he needs to look at." When the court asked whether appellant was ready to proceed on his case pro se, appellant stated that he was not prepared and requested a continuance.
The court asked appellant's trial counsel about his preparation for the case. Counsel stated that he was prepared to go forward and that his "only defense in this case * * * is going to come down to credibility in terms of cross-examining the alleged victims, and if [appellant] decides to take the stand and tell his version of what actually took place." After continuing the trial for one day to allow counsel to visit with appellant, appellant's counsel stated that he and appellant "had the same conversation for two hours yesterday" and that "[n]ot one new iota of evidence" was presented during their conversation. The prosecutor also stated "I can verify that [counsel] has put a substantial amount of time in his preparation of this case, just in the amount of time he's spent working with me on it."
After the court determined that appellant's trial counsel was adequately prepared to go forward with appellant's defense, appellant again asked the court to allow him to represent himself. Appellant then stated, "I do not want to go pro se. I need new counsel. I do not really want to go pro se voluntarily. I want to go to trial." Afterwards, the following exchange took place between the court and appellant:
"The Court: You do not need new counsel.
"[Appellant]: I am not stalling.
"The Court: The Court is not appointing new counsel on this case.
"[Appellant]: Okay. I'll go pro se.
"The Court: Are you ready to proceed today?
"[Appellant]: No, ma'am.
"The Court: How much time are you requesting?
* * *
"[Appellant]: Two months.
"The Court: When we come back here in two months, are you going to be requesting that this Court appoint counsel to represent you?
"[Appellant]: * * * I am going to go pro se because I'm being forced to by the Court. Because I don't have no choice about the counsel, I'll go pro se, but I don't want to go pro se.
"The Court: I am not accepting your choice to go pro se because you're not indicating to the Court that it's being made voluntarily.
"[Appellant]: I feel I have no options. The facts weren't investigated.
"The Court: * * * I am going to say it for you one more time. [Counsel] has represented to this Court that he is prepared to proceed with this case today."
After having reviewed the record, we find that the trial court adequately inquired into whether appellant's trial counsel was sufficiently prepared to represent appellant during his trial. Appellant's claim that his counsel was not prepared appears to be related to appellant's attempt to gain another continuance and/or another appointed attorney. Therefore, we find the record supports the trial court's conclusion that appellant's trial counsel was prepared to represent him. Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that he was denied his right to effective assistance of counsel. Appellant claims his trial counsel failed to timely object to the introduction of inadmissible evidence that was highly damaging and unfairly prejudicial.
"Reversal of a conviction on the grounds of ineffective assistance of counsel requires a showing, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive defendant of a fair trial." State v. Lindsey (2000), 87 Ohio St.3d 479, 489, certiorari denied, 531 U.S. 838,121 S.Ct. 99, following Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052. "The burden rests upon appellant to show how counsel breached the duty to provide reasonable representation." State v. Lester (1998), 126 Ohio App.3d 1, 5. Additionally, appellant must show prejudice, demonstrating that but for counsel's errors, the result of the proceedings would have been different. State v. McDonald, Franklin App. No. 01AP-1212, 2002-Ohio-3066, at ¶ 8.
In the present case, appellant claims his counsel should have objected to inadmissible hearsay introduced by the state to corroborate the testimony of Kimberly. However, "Ohio courts have consistently held that trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." State v. Monroe (Sept. 25, 2001), Franklin App. No. 01AP-275. Trial tactics that are debatable generally do not constitute a deprivation of effective counsel. State v. Phillips (1995), 74 Ohio St.3d 72, 85.
Additionally, a review of the statements appellant argues were inadmissible shows that even if counsel had objected to the statements, they may have been admissible. For example, appellant claims that his counsel should have objected to Kimberly's statements made during a telephone conversation with Rebecca Stewart on January 10, 2000. Stewart testified that Kimberly told her that appellant "had come over to the apartment and had attacked her" and "he had taken sex from her." Even though these statements were considered hearsay, they may have been admissible pursuant to Evid.R. 803(2), which allows statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Stewart stated that she knew Kimberly was upset because "[y]ou could tell she was crying, and you could hear like a shaking in her voice when she was talking to me, just very, very upset."
Accordingly, after having reviewed the record, we find that appellant has not demonstrated trial counsel breached the duty to provide reasonable representation. Appellant's second assignment of error is overruled.
Appellant argues in his third assignment of error the trial court erred when it imposed a term greater than the minimum period of incarceration without making the findings required by R.C. 2929.14. Appellant contends the trial court should have imposed the shortest prison term authorized because appellant had not served a prison term. The trial court imposed a term of imprisonment of eight years for each of appellant's convictions.
A trial court has broad discretion when sentencing within the statutory limits provided, and a reviewing court may not disturb a sentence imposed by a trial court unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. State v. Scott, Franklin App. No. 01AP-801, 2002-Ohio-2251, at ¶ 7. Appellant's three rape convictions and two kidnapping convictions were first-degree felonies. The minimum prison term for a first-degree felony is three years. R.C. 2929.14(A)(1). R.C. 2929.14(B) states in part:
"[I]f the court imposing a sentence upon an offender for a felony elects * * * to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense * * * unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
"[U]nless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence." State v. Edmonson (1999), 86 Ohio St.3d 324, 326.
"The Supreme Court of Ohio has held that R.C. 2929.14(B) does not require that the trial court give its reasons for finding that either of the two factors exist before it can lawfully impose more than the minimum authorized sentence, but has concluded that `the verb "finds" as used in this statute means that the court must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons.'" State v. Newberry, Huron App. No. H-01-020, 2002-Ohio-3972, at ¶ 21, quoting Edmonson, at 326.
In the present case, the trial court stated the following after imposing a sentence of eight years for each of appellant's convictions:
"I have to disagree * * * with your view that this is not serious, that there are more serious forms. Perhaps there are different forms of this offense. Maybe there are times when a knife is used, maybe there are times when a gun is used, but I cannot imagine a more demeaning offense to have an individual that you have been — that you have children with, who has manipulated you during that period of time, who has essentially — maybe not by use of force but certainly through mental abuse, has controlled your life and has been able to do the things that [appellant] did in this case. I think it would seriously demean the seriousness of the offenses that are involved in this case. " The court also stated in its judgment entry that it had "weighed the factors as set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14."
After having reviewed the record, this court finds the trial court made the required finding pursuant to R.C. 2929.14(B) stating that to have appellant serve a shorter prison term would seriously demean the seriousness of the offenses committed by appellant. We also find that the record supports the trial court's findings. Appellant's third assignment of error is overruled.
Appellant argues in his fourth assignment of error the trial court erred in imposing consecutive terms of imprisonment pursuant to. R.C.2929.14(E)(4). Appellant contends "the court did not make the statutorily mandated finding that the consecutive terms were not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."
R.C. 2929.14(E)(4) states:
"If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
"(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
"(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
"(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
In addition to making the findings pursuant to R.C. 2929.14(E)(4), the trial court must also comply with R.C. 2929.19(B)(2)(c), which requires the sentencing court to "make a finding that gives its reasons for selecting the sentences imposed."
"The requirement that a court give its reasons for selecting consecutive sentences is separate and distinct from the duty to make the findings required by R.C. 2929.14(E)(4). * * * Thus, after the court has made the required findings under R.C. 2929.14, it must then justify those findings by identifying specific reasons supporting the imposition of consecutive prison terms. * * * The findings mandated by R.C. 2929.14(E) and R.C. 2929.19(B)(2) must appear somewhere in the record of sentence, either in the judgment entry or in the transcript of the sentencing hearing. * * * A trial court's failure to sufficiently state its findings and reasons requires remand for resentencing." Scott, supra, at ¶ 13. (Citations omitted.)
A review of the record shows the trial court failed to make all of the findings required by R.C. 2929.14(E)(4) and 2929.19(B)(2) in order to impose consecutive sentences. Regarding the imposition of consecutive sentences, the trial court stated during appellant's sentencing hearing: "Clearly, this is the type of offense that it would seriously demean the seriousness of the offense not to order that these be served consecutively to each other. That's clearly not disproportionate to the conduct that's involved in this case. * * *" Even though the court stated that it would seriously demean the seriousness of the offense unless consecutive sentences were imposed as required by R.C. 2929.14(E)(4)(b), the court failed to: (1) find that consecutive service is necessary to protect the public from future crime or to punish the offender; (2) find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; (3) make one of the required R.C. 2929.14(E)(4)(a) through (c) findings; and (4) give the reasons for selecting consecutive sentences pursuant to R.C. 2929.19(B)(2)(c). Therefore, we find that the trial court abused its discretion when it imposed consecutive sentences. Appellant's fourth assignment of error is sustained.
Appellant argues in his fifth assignment of error that the jury's verdict was against the manifest weight of the evidence. Appellant claims the state's evidence was inconsistent and inconclusive. Appellant contends there was no medical or scientific evidence to support the charges involving Kimberly and there was little corroboration. Appellant also argues that it was not reasonable for the jury to conclude Kimberly feared appellant when the evidence showed she resided with him during the time of the alleged crimes.
"The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16, following State v. Clemons (1998), 82 Ohio St.3d 438, 444, certiorari denied (1999), 525 U.S. 1077,119 S.Ct. 816. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193, certiorari denied (1999), 527 U.S. 1042, 119 S.Ct. 2407.
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. Coley (2001),93 Ohio St.3d 253, 263. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377.
In the present case, appellant's convictions are based primarily upon Kimberly's testimony. She testified that on January 9, 2000, she was staying at a friend's house because there had been "[t]oo much fighting, no help trying to support the children, pay for the bills. I just had enough. It was time to go." Kimberly stated that she had been living there for approximately ten to fourteen days when appellant arrived at the house. Kimberly testified that she let him into the home believing he was there to talk to her about the children. Kimberly further testified that after he was inside the home, she was drying her hair in the bathroom when appellant took her by the hand and led her to the couch where he removed her pants. She stated that she fought to keep her underwear on, told him to stop, but he "went ahead and proceeded to have sexual intercourse with me."
Kimberly testified that the reason she did not tell the police about the incident at that time was because appellant told her "he would get me." She further testified that she was very afraid of him. Kimberly filed a protection order against appellant shortly after the incident. She also testified that she talked to Rebecca Stewart about what had happened.
Kimberly also testified about a second incident that occurred during the early morning hours of September 20, 2000. She stated that appellant was living in the apartment at the time and that she slept on the couch in their apartment because "I didn't want to be close to him. I sure didn't want to lay in our bed." She stated that while she was sleeping on the couch, he "comes in, much the same thing, basically, wanting to have intercourse." Kimberly testified that she first tried to make him think that she was asleep "hoping that he if he thought I was asleep, he would just go ahead and walk away." However, appellant proceeded to take her shorts off. When he started to take off her underwear, Kimberly stated she began fighting with him. Kimberly further stated that appellant removed her underwear, performed oral sex, and then had vaginal intercourse with her. Kimberly testified that she hit and pushed him, but could not move him because he was so strong. She also testified that appellant restrained her by holding her hands because "after being hit so many times, it probably hurts him. He had braced me."
Stewart's testimony was offered to support Kimberly's version of the incidents and her description of appellant's demeanor. In addition to Stewart's testimony regarding comments Kimberly made during their January 10, 2000 telephone conversation mentioned previously, Stewart further testified that while Kimberly lived in her apartment, appellant would "on a regular basis * * * show up at the apartment, knock on the door. Whether or not we answered the door, when I would leave for work, he would be parked at the end of the street in Amanda's car." Stewart also testified that one time she called the police fearing for her own safety. Stewart also stated that each time she and Kimberly called the police, appellant would show up the same night.
Appellant argues that his acquittal of the majority of his charges shows the jury did not find Amanda or Kimberly entirely credible and that the evidence on the remaining counts was not so persuasive as to support guilty verdicts. However, the fact that the jury acquitted appellant of similar charges but then found him guilty of the remaining charges does not show that the jury disbelieved Amanda or Kimberly. For example, the United States Supreme Court has held that an inconsistent jury verdict does not mandate a reversal of a defendant's conviction because of: (1) the general reluctance of courts to inquire into the workings of the jury; (2) the equal possibility that the inconsistency was caused either by the jury's leniency toward a criminal defendant or by a mistake by the jury; (3) the state being precluded from appealing an inconsistent verdict by the Double Jeopardy Clause of the United States Constitution; and (4) the fact that a criminal defendant may be afforded protection against jury irrationality or error by an independent review of the sufficiency of the evidence by trial and appellate courts. United States v. Powell (1984), 469 U.S. 57, 65-69, 105 S.Ct. 471. See, also, State v. Lovejoy (1997), 79 Ohio St.3d 440, 444; State v. Williams (Apr. 29, 1999), Franklin App. No. 98AP-975.
Following a review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find no basis to believe that the jury clearly lost its way, that a manifest miscarriage of justice occurred, or that appellant's convictions were against the manifest weight of the evidence. See State v. Smith (1997), 80 Ohio St.3d 89, 114, certiorari denied (1998), 523 U.S. 1125,118 S.Ct. 1811. The record supports the jury's determination that appellant committed the crimes against Kimberly as stated in appellant's indictment. Accordingly, we find that appellant's convictions were not against the manifest weight of the evidence. Appellant's fifth assignment of error is overruled.
Appellant argues in his sixth assignment of error the trial court erred when it entered judgments of conviction for his two counts of kidnapping. Appellant argues that his two kidnapping convictions should have been merged with his three rape convictions pursuant to Ohio's allied offense statute.
R.C. 2941.25 states:
"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
When determining whether two or more offenses are allied offenses of similar import:
"Courts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other.' * * * And if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus." State v. Rance (1999), 85 Ohio St.3d 632, 638-639, quoting State v. Jones (1997), 78 Ohio St.3d 12, 14.
"The burden of establishing that two offenses are allied falls upon the defendant." State v. Early, Franklin App. No. 01AP-1106, 2002-Ohio-2590, at ¶ 9, following State v. Mughni (1987), 33 Ohio St.3d 65, 67.
The Ohio Supreme Court has held that kidnapping, in violation of R.C.2905.01(A)(4), and rape, in violation of R.C. 2907.02(A)(2), can constitute allied offenses of similar import. State v. Hickman, Summit App. No. 20883, 2002-Ohio-3406, at ¶ 34, following State v. Donald
(1979), 57 Ohio St.2d 73, syllabus.
"Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions[.]" State v. Logan (1979), 60 Ohio St.2d 126, syllabus.
A review of the record shows the trial court did not find that appellant's rape and kidnapping crimes were committed separately or with separate animus. However, a review of the record also shows that appellant did not object to the court failing to merge the offenses. A defendant's failure to object to convictions or sentencing at trial results in a waiver of an allied offense claim on appeal absent plain error. State v. Denham, Greene App. No. 2001 CA 105, 2002-Ohio-3912, at ¶ 10, following State v. Comen (1990), 50 Ohio St.3d 206, 211.
In a plain error analysis, the court determines prejudice by asking whether the error created a manifest injustice or seriously affected the fairness, integrity or public reputation of judicial proceedings. State v. Latson (1999), 133 Ohio App.3d 475, 479. Under the plain error standard, reversal is warranted only when the outcome of the proceedings below clearly would have been different absent the error. State v. Gaston (Feb. 7, 2002), Cuyahoga App. No. 79626.
A review of the record shows that the proceedings below clearly would have been different absent appellant's failure to object. The first rape and kidnapping offenses took place either January 9 or 10, 2000. Kimberly testified that appellant took her by the hand from the bathroom to the living room where he forced her to have sexual intercourse on the couch. This took place after Kimberly let appellant into the apartment where she was staying. The second rape and kidnapping offenses took place on September 20, 2000. During this instance, Kimberly was sleeping on a couch when appellant forced himself upon her.
In each of these two instances, the evidence does not show that appellant committed rape and kidnapping separately or with separate animus. The short length of time during both incidents between when appellant restrained or moved Kimberly and when he sexually assaulted her shows that the restraint or movement of Kimberly was incidental to the separate underlying crime of rape. Both incidents began and ended in the apartment where Kimberly resided. Therefore, appellant's kidnapping and rape convictions should have been merged pursuant to R.C. 2941.25. Appellant's sixth assignment of error is sustained.
Appellant argues in his seventh assignment of error the trial court erred when it found appellant to be a sexual predator. Appellant claims that insufficient evidence was presented to establish that he was likely to commit another sex offense. Appellant also claims that it was improper for the court to consider the details of the crimes he was accused of committing against Amanda.
A sexual predator is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C.2950.01(E). After reviewing all testimony and evidence presented at a hearing conducted pursuant to R.C. 2950.09(B)(1), a judge shall determine by clear and convincing evidence whether the offender is a sexual predator. R.C. 2950.09(B)(3). In making the determination of whether the offender is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
"(a) The offender's age;
"(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
"(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
"(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
"(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
"(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
"(g) Any mental illness or mental disability of the offender;
"(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
"(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
"(j) Any additional behavioral characteristics that contribute to the offender's conduct." R.C. 2950.09(B)(2).
An appellate court reviewing a finding that the appellant is a sexual predator must examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the clear and convincing standard. State v. Keffe (Sept. 21, 2000), Franklin App. No. 00AP-118.
"Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State v. Smith (June 22, 1999), Franklin App. No. 98AP-1156, following Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121, 122.
Appellant was convicted of three counts of rape, which is a violation of R.C. 2907.02. Rape is considered a "sexually oriented offense" pursuant to R.C. 2950.01(D)(1). The record also shows that sufficient evidence exists to demonstrate that appellant is likely to engage in the future in one or more sexually oriented offenses. Kimberly testified that appellant forced her to engage in sexual conduct several times including the two instances, which formed the basis for appellant's three rape convictions. "[T]he commission of multiple sex offenses over a period of time can show that the defendant has a compulsion, and that he or she likely `will have a similar compulsion in the future to commit these kinds of sexual offenses.'" State v. Jackson (Feb. 20, 2001), Franklin App. No. 00AP-183, quoting State v. Bartis (Dec. 9, 1997), Franklin App. No. 97APA05-600, affirmed (1998), 84 Ohio St.3d 9.
Additionally, in determining an offender's propensity to commit future sex offenses, the trier of fact can use past behavior to gauge future propensity to commit crimes since past behavior is often an indicator of future violent tendencies even if the prior behavior did not result in a criminal conviction. State v. Foster (May 19, 2000), Washington App. No. 99 CA 44. "[P]rior arrests for other sexually oriented offenses, some but not all of which resulted in convictions, are appropriate for consideration in sexual predator determinations because they are relevant to pertinent aspects of a defendant's criminal and social history and are probative of the propensity of an offender to engage in other sexually oriented offenses in the future." State v. Robertson (2002),147 Ohio App.3d 94, 103.
In the present case, the court considered the testimony presented by Amanda concerning appellant's actions toward her. Amanda testified that appellant hit her with an open hand on November 21, 2000, prior to forcing himself upon her in order to have sexual intercourse. Appellant admitted in his testimony that he hit Amanda with his hand because "she sa[id] something vulgar to me" while they were arguing. Amanda also testified that appellant forced her to have sexual intercourse with him in a manner very similar to Kimberly's testimony. After finding appellant to be a sexual predator, the court stated appellant "has a problem with his relationships, and he has a problem with apparently how he views women and how he can treat women, and it seems to me that this is exactly the type of person that is going to reoffend."
The prosecution also presented evidence concerning appellant's propensity to threaten women with violence. Kimberly testified that she received several letters from appellant after he had been indicted, which were "very intimidating, letting me know that I am going to be paid back; basically letting me know if I testify, I will be paid back." One letter, received by Kimberly approximately one week prior to appellant's trial, stated the following: "I will use the rest of my life to return your hurt and pain. I didn't start this or do this, but if you try and play me all the way, I sure as hell will finish this, regardless of how long it takes me. This, I promise you."
After having reviewed the record, we find that sufficient evidence was presented to show by clear and convincing evidence that appellant is a sexual predator. Appellant's three rape convictions combined with his tendency toward violence demonstrate that appellant is likely to engage in the future in one or more sexually oriented offenses. Appellant's seventh assignment of error is overruled.
Appellant argues in his eighth assignment of error the trial court abused its discretion when it ordered him to pay a fine and financial sanction. In its judgment entry, the court ordered appellant to pay a fine and financial sanction of $385. Appellant claims that if the order is enforced by withdrawing all money in excess of $10 from his personal account in prison, it "will operate to make him the poorest of the poor a pauper among the prison's destitute."
A court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under R.C. 2929.18 or 2929.25. R.C. 2929.18(A). Pursuant to R.C. 2929.18(A)(3)(a), a court may impose a fine for a first-degree felony of not more than twenty thousand dollars. "A court that imposes a financial sanction upon an offender may hold a hearing if necessary to determine whether the offender is able to pay the sanction or is likely in the future to be able to pay it." R.C. 2929.18(E).
A review of the record shows the trial court complied with the above requirements of the Revised Code. Appellant was not fined by the court an amount greater than the amount allowed by R.C. 2929.18(A)(3)(a) for a first-degree felony. The court also found that it levied the fine and financial sanction after considering appellant's present and future ability to pay it. Additionally, a review of the record shows appellant never objected to the trial court's imposition of the $385. Even if appellant were able to show that he was unable to pay the fine, the current sentencing statutes provide courts an avenue to relieve an indigent person of his or her obligation to pay a fine after the person has served his or her sentence pursuant to R.C. 2929.18(G). State v. Northam (Sept. 30, 1999), Franklin App. No. 98AP-1592. Therefore, we find the trial court did not abuse its discretion when it required appellant to pay a fine and financial sanction of $385. Appellant's eighth assignment of error is overruled.
Accordingly, appellant's fourth and sixth assignments of error are sustained, and appellant's first, second, third, fifth, seventh, and eighth assignments of error are overruled. We affirm appellant's three rape convictions, the trial court's imposition of an eight-year sentence for each of appellant's three rape convictions, the trial court's determination that appellant is a sexual predator, and the court's imposition of a fine and financial sanction of $385. We reverse the trial court's imposition of consecutive sentences and remand this matter to the trial court for a determination of whether consecutive sentences should be imposed consistent with this opinion. We also remand the present case to the trial court to merge appellant's two kidnapping convictions with his three rape convictions pursuant to R.C. 2941.25.
Judgment affirmed in part and reversed in part; case remanded with instructions.
HARSHA, J., concurs.
LAZARUS, J., concurs in judgment only.
HARSHA, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.