The STATE of Ohio, Appellee,

v.

ROBERTSON, Appellant.

Court of Appeals of Ohio,
Third District, Hancock County.

No. 5–01–31.

Decided Feb. 7, 2002.

Robert A. Fry, Hancock County Prosecuting Attorney, and Mark C. Miller, Assistant Prosecuting Attorney, for appellee.

Kenneth J. Sass, for appellant.

WALTERS, Judge.

{¶ 1} Defendant-appellant, Glen R. Robertson, Jr., appeals from a judgment of the Hancock County Common Pleas Court finding him to be a sexual predator. Robertson asserts that the trial court erred in considering his role in his

accomplice's rape of a twelve-year-old girl. Because these facts are integral circumstances of the original crime, and because sexually oriented offense charges for which the defendant was not convicted may be considered for sexual predator determinations, we do not find that the court erred in this respect. Robertson also argues that a one in five chance of reoffending in the next fifteen years, as reflected in a recidivism test result, does not amount to a likelihood of reoffending sexually. However, despite these noteworthy results, courts are not bound by psychiatric findings and "likely to reoffend sexually" is not couched solely in terms of recidivism test results. Finally, Robertson contends that the trial court and psychological report unduly relied upon the facts of the underlying offense and the possibility of a violent reoffense instead of the likelihood that he would reoffend sexually, ultimately concluding that the adjudication is not supported by sufficient evidence and is against the manifest weight of the evidence. Reviewing the evidence in its entirety, we find these contentions to be meritless and, therefore, affirm the trial court's determination.

{¶ 2} The facts relevant to this appeal are as follows. On August 30, 1988, a Hancock County Grand Jury returned a three-count indictment against Robertson, including, on one count of rape, an aggravated felony of the first degree, in violation of R.C. 2907.02, and two counts of complicity for aiding and abetting his codefendant, Randy Colemen, in the rape of the twelve-year-old girl, also aggravated felonies of the first degree.

{¶ 3} Robertson entered an initial plea of not guilty to all counts of the indictment, and the matter was assigned for a jury trial. Prior to trial, however, Robertson entered into a negotiated plea agreement whereby the charges for complicity to rape were dismissed in exchange for a plea of guilty to rape. The court accepted the plea to the amended charge and proceeded to sentence Robertson to an indefinite term of five to twenty-five years' imprisonment.

{¶ 4} Pursuant to the provisions set forth in R.C. Chapter 2950, the trial court initiated sexual predator classification proceedings. A hearing on the matter took place on July 26, 2000, wherein oral arguments were presented, and several exhibits were admitted and accepted as a part of the record. By entry dated July 27, 2001, the trial court found, by clear-and-convincing evidence, that Robertson was likely to engage in future sexually oriented crimes and adjudicated him a sexual predator. This appeal followed.

{¶ 5} Robertson presents the following two assignments of error with a consolidated argument for our consideration.

### Assignment of Error Number One

{¶ 6} "The lower court erred in rendering a decision which was against the manifest weight of the evidence when it classified the appellant as a sexual predator."

### Assignment of Error Number Two

{¶ 7} "The lower court erred as a matter of law in rendering a decision classifying the appellant as a sexual predator without sufficient evidence to prove by clear and convincing evidence that appellant is a sexual predator."

{¶ 8} The Ohio Supreme Court has held that conviction of a single sexually oriented offense can support a sexual predator adjudication.[1] A "sexual predator" is defined by the Ohio Revised Code as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented crimes."[2] The crime of rape is included in the definition of "sexually oriented offense."[3]

{¶ 9} In making a sexual predator determination, R.C. 2950.09(B)(2) states that the "trial court shall consider all relevant factors, including, but not limited to, all of the following":

{¶ 10} "(a) The offender's age;

{¶ 11} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;

{¶ 12} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;

{¶ 13} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;

{¶ 14} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;

{¶ 15} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;

{¶ 16} "(g) Any mental illness or mental disability of the offender;

{¶ 17} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;

---

1. *State v. Eppinger* (2001), 91 Ohio St.3d 158, 167, 743 N.E.2d 881.

2. R.C. 2950.01(E).

3. R.C. 2950.01(D)(1).

{¶ 18} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;

{¶ 19} "(j) Any additional behavioral characteristics that contribute to the offender's conduct."

{¶ 20} Rigid rules generally have no place in this determination, as courts should apply the enumerated factors and consider the relevance, application, and persuasiveness of individual circumstances on a case-by-case basis.[4]

{¶ 21} R.C. 2950.09(C)(2) states that after reviewing all testimony, evidence, and the factors listed in R.C. 2950.09(B)(2), the court "shall determine by clear and convincing evidence whether the offender is a sexual predator." The standard of clear-and-convincing evidence is as follows:

{¶ 22} "[T]hat measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."[5]

{¶ 23} In reviewing trial court decisions founded upon this degree of proof, an appellate court must examine the record to determine whether the evidence satisfies the clear-and-convincing standard.[6]

{¶ 24} Robertson asserts that the trial court unduly relied upon the underlying facts of the original offense and focused upon the potential severity of another sexual crime as opposed to the likelihood that he would reoffend.

{¶ 25} "Instead of deciding whether the offender is particularly deserving of punishment, the issue presented to the court at a sexual offender classification hearing is whether the defendant is likely to commit future sexually oriented offenses."[7] While it is impermissible to rely solely on the underlying conviction in a sexual predator adjudication, R.C. 2950.09(B)(2) mandates the consideration of certain facts of the underlying offense and any other relevant circumstances or additional behavioral characteristics that contribute to the offender's conduct or otherwise indicate that he is likely to engage in another

4. *State v. Dennis* (Sept. 7, 2000), Logan App. No. 8–2000–08, 2000 WL 1273581; *State v. Dewitt* (Nov. 15, 2000), Union App. No. 14–2000–21.

5. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, citing *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118.

6. Id.

7. *Eppinger*, 91 Ohio St.3d at 166, 743 N.E.2d 881.

sexually oriented offense in the future.[8]   Circumstances within the underlying offense are often especially indicative of the offender's likelihood to reoffend sexually, and the weight of such evidence can, without more, support the designation of sexual predator by clear-and-convincing evidence.[9]

{¶ 26}   The underlying facts of the incident at issue are as follows.   In the early morning hours of August 25, 1988, Robertson and his friend, Randy Coleman, were intoxicated and traveling north on Interstate 75 when they spotted a twenty-two-year-old female and her twelve-year-old niece walking along the highway.   The men stopped under the guise of offering assistance, but soon sexually propositioned the women and chased them to their stranded vehicle when these sexual advances were refused.   As the occupants waited in the locked vehicle for assistance to arrive, the men attempted to entice them with offers of alcohol and cocaine.   When these efforts failed, Robertson used a tire jack to break a window, unlocked the vehicle, and extricated his victim by force, striking her repeatedly with the tire jack.   Robertson then continued to punch and kick his victim, dragged her to a dimly lit fence row along the interstate easement, undressed her, and forced her to perform fellatio upon the threat of death while his accomplice orally and vaginally raped her twelve-year-old niece by a nearby overpass.

{¶ 27}   When a state trooper arrived, Robertson attempted to throw his victim over the fence row, leapt the fence, and fled across an adjacent field until the trooper drew his service revolver and threatened to shoot.   Coleman also fled but was arrested within a short period of time.   When questioned, Robertson claimed that the man accompanying him was a hitchhiker with whom he was unfamiliar and provided varying accounts of the event, maintaining that the woman and her niece had offered the men sexual favors if they would repair the vehicle and that the sexual contact was consensual.   Robertson alleged that the woman and her niece had initiated an altercation by cussing at the men and damaging his car, telling investigators that he "took the bumper jack out to beat the shit out of that bitch."   Robertson subsequently asserted that he could not remember the entirety of the assault but stated that he did not doubt or question the victims' version of events.

{¶ 28}   In reviewing the circumstances of the underlying crime and applying the factors contained in R.C. 2950.09(B)(2), the trial court found that there was a

**8.**  *State v. Henson* (Mar. 14, 2000), Franklin App. No. 99AP–553, 2000 WL 271756, appeal dismissed (2000), 89 Ohio St.3d 1454, 731 N.E.2d 1140;  R.C. 2950.09(B)(2)(j).

**9.**  *State v. Eaton* (Nov. 9, 2001), Montgomery App. No. 18690, 2001 WL 1388518;  *State v. Queary* (Aug. 17, 2001), Montgomery App. No. 18300, 2001 WL 929988;  see, also, *State v. Henson* (Mar. 14, 2000), Franklin App. No. 99AP–553, 2000 WL 271756, appeal dismissed (2000), 89 Ohio St.3d 1454, 731 N.E.2d 1140.

lack of disparity between Robertson's age and that of the particular victim he raped, that the rape was not part of a pattern of abuse, and that there was no indication of mental illness. Though Robertson asserts that the court failed to afford any consideration to his rehabilitative efforts or the lapse of time since the original offense, the record demonstrates that the court was well aware of the date of the underlying offense, discussed the fact that Robertson had transferred institutions to avail himself of sexual programming, and considered these and other favorable factors in light of the entirety of evidence presented and requisite standard of proof.

{¶ 29} In contrast to factors favoring Robertson, the trial court found that excessive force and multiple threats of cruelty and violence had been employed during the commission of the crime, taking particular note of the methodology employed by Robertson.[10] Although the victims were not impaired with drugs or alcohol, the court noted that the men attempted to lure the victims out of their car with intoxicants and found that Robertson's use of alcohol exacerbated the violent manner in which the offense was perpetrated. The court further examined Robertson's role in the rape of the twelve-year-old girl, considered the age discrepancy between the child and her attacker, and found that there had been multiple victims to Robertson's underlying offense, stating:

{¶ 30} "I don't think it's unfair or unlawful for the Court to consider the age of the other victim involved in general. We had Mr. Robertson and his co-defendant approaching a vehicle which was housing two women at the time. It was Mr. Robertson[,] from the evidence that I have read[,] who was the one that broke open the window [and] dragged them out[.] [I]t was perhaps serendipity that caused Mr. Robertson to take the 22 year old versus the twelve year old, but he certainly precipitated the events that were to follow and the brutalization of the twelve year old along with his own brutalization of a 22 [year old] victim. His direct victim [was] 22, the other victim involved was a much younger pubescent teenage girl[;] he facilitated her brutalization as well."

{¶ 31} In addition to reviewing predatory indicators reflected in the facts of the underlying offense, the trial court expressly states that it "[had] been provided all other information" and attempted to "familiarize [itself] as best as possible under the circumstances with respect to this case." The court further indicates that it had reviewed all documentation, including, but not limited to, the presentence investigation report, the Institution Summary Report, a school certificate for employment readiness, criminal history risk scores, and a Court Diagnostic and Treatment Center ("CDTC") report written by Timothy F. Wynkoop, Ph.D., a consulting neuropsychologist ("Wynkoop"). A review of the

---

10. See R.C. 2950(B)(2)(h) and (i).

court's pronouncement reveals that considerable attention and deference was afforded to the CDTC report and Wynkoop's recommendation.

{¶ 32}  Though the trial court found that the manner in which the crime was carried out was perhaps the most compelling argument in favor of classification, the court accorded meaningful consideration to the entirety of the evidence presented and devoted significant attention to updated evidentiary material.  The court acknowledged that "the Court may not only take into consideration the offense itself * * * [and] can't simply rely upon the brutality of the circumstance to say he is a sexual predator, we must look to the methodology that they employed under the circumstances to reach that conclusion."

{¶ 33}  Having reviewed the record herein, we do not find that inappropriate reliance was placed upon the facts of the underlying offense.  The details of the event vividly illustrate Robertson's violent propensities, his perception of women, his attitude towards sex, and his predatory characteristics.  The weight of this evidence alone provided significant inferential proof of a likelihood to reoffend sexually in the future.  Furthermore, based upon our review, we find that the trial court focused its inquiry on the likelihood of reoffense and considered the facts of the crime and Robertson's violent propensities in an appropriate context.

{¶ 34}  Robertson infers that the trial court's reliance upon the CDTC report and Wynkoop's opinion is misplaced, contending that the report also focuses too heavily on the underlying facts of the crime and the possibility for a high level of violence should Robertson reoffend instead of the general likelihood that he will reoffend sexually.  We note initially that, although psychiatric evidence may provide sufficient independent support for a sexual predator adjudication,[11] this material should generally be reviewed in light of the entirety of evidence presented and the role the psychiatric findings played in the court's overall determination, as courts are generally free to accept or reject the entirety or portions of a psychologist's conclusions.

{¶ 35}  For his assessment, Wynkoop reviewed Robertson's indictment, presentence investigation report, police report, and an institution summary report with supporting documentation and corresponding treatment summary prepared by Dr. Nancy M. Steele, Ph.D. Wynkoop also administered several screening tools, including sex offender recidivism instruments, denoting that the recidivism instruments generally classified Robertson within a group who commonly exhibit what is characterized as a moderate to low likelihood of reoffending. The results of a Static 99 test, an actuarial instrument designed to estimate the probability of

---

11.  *State v. Barrett* (May 5, 2000), Hancock App. No. 5–99–60, 2000 WL 566155.

sexual recidivism among adult males who have been convicted of at least one sexual offense, indicated that Robertson fell into an offender group in which roughly one in five will reoffend in the next fifteen years. Wynkoop also conducted Minnesota Multiphasic Personality Inventory–2 testing, summarizing the results as follows:

{¶ 36} "[Robertson's] responses to the MMPI–2 suggest authority problems, cynicism, idiosyncratic perceptions of the world around him, difficulty inhibiting his impulses, and suspiciousness of the motives of others. Although he may feel alienated from others, he may still feel that he is the focus of their attention. He also endorsed some odd perceptual experiences and sexual concerns.

{¶ 37} "Persons with his MMPI–2 profile type tend to have difficulty fitting in with others, and are often perceived by others as nonconforming and resentful of authority. They tend to harbor deviant religious and/or political views, and their behavior is erratic, unpredictable, and impulsive. Their crimes tend to be poorly planned and vicious. They may grapple with sexual identity issues, and act out sexually to demonstrate their sexual adequacy."

{¶ 38} In his classification recommendation, Wynkoop examined the predatory characteristics illustrated within the original offense in light of the results of the screening tools and recidivism instruments, opining that behavioral and psychological factors reflected in this material indicate that Robertson is a special case within the identified recidivism group, an individual whose "situation connotes sufficient risk, or likelihood of reoffending sexually, to justify classification as a Sexual Predator." Wynkoop found that Robertson "continues to struggle with sexual issues of the type that likely contributed to his offense," and stated in concluding his recommendation, "My hope is that not only will the scrutiny that this classification entails protect the community, but will help Mr. Robertson avoid future sexual indiscretions which will help him avoid future punishments."

{¶ 39} Robertson seizes upon and attempts to isolate the Static 99 recidivism test results, asserting that a twenty-percent probability of reoffending is sufficient to rebut the concept of "likely to reoffend sexually," as contemplated by R.C. 2950.09(B). However, whether an offender is "likely to reoffend sexually" is not bound by or couched in terms of recidivism test results, but is instead defined by the application and examination of statutory factors and consideration of relevant circumstances and evidence on a case-by-case basis. Despite the noteworthy Static 99 results or Wynkoop's evaluation of those results, "the law does not rely solely on psychiatric findings for a determination of recidivism." [12]

12. *State v. Arter* (Dec. 12, 2001), Logan App. No. 8–01–71, 2001 WL 1581567.

{¶ 40} Though Wynkoop found that "the possibility of future violence ma[de] careful consideration of his sex offender classification even more salient[,]" the substance of his evaluation focused upon Robertson's likelihood of reoffending sexually. Moreover, reviewing this material in light of the entirety of evidence presented and role the recidivism test results and psychiatric findings played in the court's overall determination, we do not find that the trial court erred in its evaluation or consideration of the CDTC report.

{¶ 41} Robertson further argues that the twelve-year-old victim raped by his codefendant should be attributed solely to the actions of his codefendant and cannot be considered for his sexual predator determination. We do not agree.

{¶ 42} As mentioned previously, R.C. 2950.09(B)(2) specifically directs courts to consider certain facts of the underlying offense and any other relevant circumstances indicative of the likelihood to reoffend sexually in the future.[13] The fact that Robertson provided both men access to their victims and proceeded with indifference as his accomplice vaginally and orally raped a twelve-year-old girl while he raped a woman are integral circumstances of the original crime that provide insight into pertinent character traits indicative of his predilection to commit future sexual offenses. These facts were well within the ambit of material the trial court could consider for its sexual predator determination. Furthermore, while testimony relating to charges for which the defendant was not convicted may generally not be considered in sentencing, prior arrests for other sexually oriented offenses, some but not all of which resulted in convictions, are appropriate for consideration in sexual predator determinations because they are relevant to pertinent aspects of a defendant's criminal and social history and are probative of the propensity of an offender to engage in other sexually oriented offenses in the future.[14] Two of the three counts in the original indictment charged Robertson with complicity to rape for aiding and abetting Randy Colemen in connection with the vaginal and oral rape of the twelve-year-old girl. Therefore, we find that the court's conclusion that Robertson's underlying offense produced two victims and consideration of the age disparity of the twelve-year-old victim were not error within the context of a sexual predator hearing.

---

**13.** *State v. Henson* (Mar. 14, 2000), Franklin App. No. 99AP–553, 2000 WL 271756, appeal dismissed (2000), 89 Ohio St.3d 1454, 731 N.E.2d 1140; R.C. 2950.09(B)(2)(j).

**14.** *State v. Anderson* (1999), 135 Ohio App.3d 759, 764, 735 N.E.2d 909, dismissed and appeal not allowed by (1999), 87 Ohio St.3d 1459, 720 N.E.2d 541, and (2000), 88 Ohio St.3d 1434, 724 N.E.2d 810. See, also, *State v. Childs* (2001), 142 Ohio App.3d 389, 392, 396, 755 N.E.2d 958, dismissed and appeal not allowed in (2001), 93 Ohio St.3d 1411, 754 N.E.2d 259.

{¶ 43} Finally, Robertson argues that the judgment classifying him as a sexual predator is not supported by sufficient evidence, or, in the alternative, that the trial court's decision is against the manifest weight of the evidence.

{¶ 44} As a threshold matter, we note that, based upon the Ohio Supreme Court's civil characterization of sexual predator proceedings in *State v. Cook*,[15] the question of whether manifest weight and sufficiency of the evidence claims should be addressed under the civil standard set forth in *C.E. Morris Co. v. Foley Construction Co.*,[16] or the criminal standard enumerated in *State v. Thompkins*,[17] has become an issue that has not been uniformly resolved among Ohio's appellate districts. However, even the more stringent criminal standard requires a finding that "the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the proceeding must be reversed" to overturn such a determination.[18] Furthermore, the statutory scheme of R.C. Chapter 2950 provides the trial court with significant discretion in evaluating factors that may be relevant to its recidivism determination, and the *Cook* decision illustrates that these determinations are to be afforded considerable deference.[19]

{¶ 45} Our review of the record persuades us that, regardless of the standard applied, there was sufficient evidence upon which the court could have found that Robertson was likely to commit another sexually oriented offense in the future by clear-and-convincing evidence. The trial court set forth the statutory factors it found probative for its determination, providing a clear and accurate record of what testimony and evidence were presented and the manner

---

**15.** *State v. Cook* (1998), 83 Ohio St.3d 404, 425, 700 N.E.2d 570.

**16.** *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. See *State v. Hunter* (2001), 144 Ohio App.3d 116, 121, 759 N.E.2d 809 (First Appellate District); *State v. Morris* (July 18, 2000), Washington App. No. 99 CA 47, 2000 WL 1010822 (Fourth Appellate District); *State v. McHenry* (Oct. 15, 2001) Stark App. No. 2001CA00062, 2001 WL 1265598 (Fifth Appellate District); *State v. Parsons* (Aug. 17, 2001), Huron App. No. H-00-042, 2001 WL 950043 (Sixth Appellate District).

**17.** *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. See *State v. Bolin* (June 15, 2001), Montgomery App. No. 18605, 2001 WL 669825 (Second Appellate District); *State v. Turner* (Oct. 17, 2001), Hancock App. No. 5–01–27, 2001 WL 1240134 (Third Appellate District); *State v. Sims* (June 27, 2001), Jefferson App. Nos. 99–JE–43 and 99–JE–57, 2001 WL 741528 (Seventh Appellate District); *State v. Pryce* (June 28, 2000), Summit App. No. 19888, 2000 WL 840499 (Ninth Appellate District); *State v. Morrison* (Sept. 20, 2001), Franklin App. No. 01AP–66, 2001 WL 1098086 (Tenth Appellate District); *State v. Dama* (Dec. 21, 2001), Trumbull App. No. 2000–T–0086, 2001 WL 1647188 (Eleventh Appellate District); *State v. Benson* (Aug. 28, 2000), Butler App. No. CA99–11–194, 2000 WL 1221851 (Twelfth Appellate District).

**18.** *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

**19.** *Cook*, 83 Ohio St.3d at 426, 700 N.E.2d 570.

in which they were considered. It is evident from the trial court's lengthy discussion and analysis that it examined all relevant evidence for its determination. Weighing this evidence, the credibility of witnesses, and all reasonable inferences, we cannot say that the trier of fact clearly lost its way or created such a manifest miscarriage of justice that the proceeding must be reversed. Accordingly, appellant's assignments of error are not well taken and are therefore overruled.

{¶ 46} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

THOMAS F. BRYANT and HADLEY, JJ., concur.