The STATE of Ohio, Appellee,

v.

McKINNISS, Appellant.

[Cite as State v. McKinniss, 153 Ohio App.3d 654, 2003-Ohio-4239.]

Court of Appeals of Ohio,
Third District, Crawford County.

No. 3-03-05.

Decided Aug. 11, 2003.

John Spiegel, for appellant.

Stanley Flegm, Crawford County Prosecuting Attorney, and Clifford Murphy, Assistant Prosecuting Attorney, for appellee.

SHAW, Judge.

{¶ 1} The appellant, Richard E. McKinniss, appeals from the February 11, 2003 judgment of the Common Pleas Court of Crawford County, Ohio, classifying him as a sexual predator pursuant to R.C. 2950.09.

{¶ 2} In 1994, McKinniss was indicted for rape and gross sexual imposition against his stepdaughter, who was six years old at the time of the offenses. This rape count was reduced to sexual-battery, a violation of R.C. 2907.03(A)(5), with a specification for a prior conviction of a crime of violence, and the second count was dismissed in exchange for McKinniss's plea of guilty to the sexual-battery charge. On February 9, 1995, McKinniss was found guilty of sexual battery and sentenced to an indefinite term of imprisonment of two to ten years.

{¶ 3} On January 10, 2003, the trial court held a sexual-offender classification hearing pursuant to R.C. 2950.09 to determine whether McKinniss should be classified as a sexual predator. During the hearing, two psychological reports were submitted to the court, one prepared by Dr. James Sunbury on behalf of the state and the other prepared by Dr. John Fabian on behalf of the defendant. In addition, Dr. Fabian testified at the hearing. Thereafter, on January 29, 2003, the trial court determined that McKinniss was a sexual predator. This appeal followed, and McKinniss now asserts two assignments of error:

"The trial court erred in granting the state's motion to determine the appellant to be a sexual predator, as the court relied upon an evaluation that was not done with the latest and best scientific methodology.

"The trial court erred in considering a remark that defendant made during the court proceeding and defendant's demeanor as proof that the defendant is likely to reoffend sexually."

{¶ 4} As both assignments of error relate to the sexual-predator determination, they will be discussed together. McKinniss contends that the trial court should not have determined him to be a sexual predator because it erroneously based its

decision on Dr. Sunbury's psychological report, which did not entail testing upon McKinniss and concluded that he was at a high risk to reoffend sexually. Rather, McKinniss maintains that the trial court should have relied upon the testimony and report generated by Dr. Fabian, which involved the use of psychological tests and concluded that McKinniss was only moderately likely to engage in the future in one or more sexually oriented offenses.

{¶ 5} A "sexual predator" is defined by the Ohio Revised Code as the "person [who] has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented crimes." R.C. 2950.01(E)(1). The crime of sexual battery is included in the definition of "sexually oriented offense." R.C. 2950.01(D)(1)(a).

{¶ 6} In making a sexual-predator determination, R.C. 2950.09(B)(2) states that the "judge shall consider all relevant factors, including, but not limited to, all of the following:

"(a) The offender's * * * age;

"(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;

"(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed * * *;

"* * *

"(g) Any mental illness or mental disability of the offender;

"(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;

"* * *

"(j) Any additional behavioral characteristics that contribute to the offender's conduct."

{¶ 7} In addition, "[r]igid rules generally have no place in this determination, as courts should apply the enumerated factors and consider the relevance, application, and persuasiveness of individual circumstances on a case-by-case basis." *State v. Robertson,* 147 Ohio App.3d 94, 2002-Ohio-494, 768 N.E.2d 1207, ¶ 20. In classifying an offender as a sexual predator, the Revised Code requires the trial court to make this finding only when the evidence is clear and convincing that the offender is a sexual predator. R.C. 2950.09(B)(4). The Supreme Court of Ohio has held that "[c]lear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is

required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal.*" (Emphasis added.) *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 53 O.O. 361, 120 N.E.2d 118, citing *Merrick v. Ditzler* (1915), 91 Ohio St. 256, 110 N.E. 493. Further, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* supra. Thus, we are required to determine whether the evidence was sufficient for the trial court to classify McKinniss as a sexual predator by a clear-and-convincing degree of proof.

{¶ 8} "Instead of deciding whether the offender is particularly deserving of punishment, the issue presented to the court at a sexual offender classification hearing is whether the defendant is likely to commit future sexually oriented offenses." *State v. Eppinger* (2001), 91 Ohio St.3d 158, 166, 743 N.E.2d 881. The statutory scheme of R.C. Chapter 2950 provides the trial court with significant discretion in evaluating factors that may be relevant to its recidivism determination. See *State v. Cook* (1998), 83 Ohio St.3d 404, 426, 700 N.E.2d 570. However, R.C. 2950.09(B)(2) mandates the consideration of certain facts of the underlying offense and any other relevant circumstances or additional behavioral characteristics that contribute to the offender's conduct or otherwise indicate that he is likely to engage in another sexually oriented offense in the future. "Circumstances within the underlying offense are often especially indicative of the offender's likelihood to re-offend sexually, and the weight of such evidence can, without more, support the designation of sexual predator by clear and convincing evidence." Id., 147 Ohio App.3d at 99, citing *State v. Eaton,* 2d Dist. No. 18690, 2001-Ohio-1760, 2001 WL 1388518; *State v. Queary,* 2d Dist. No. 18300, 2001-Ohio-1491; *State v. Henson* (Mar. 14, 2000), 10th Dist. No. 99AP–553, 2000 WL 271756.

{¶ 9} In examining the circumstances surrounding the underlying offense, this court, in relying upon authority from the Tenth District Court of Appeals, has previously determined:

"The age of the victim is probative because it serves as a telling indicator of the depths of offender's inability to refrain from such illegal conduct. The sexual molestation of young children, aside from its categorization as criminal conduct in every civilized society with a cognizable criminal code, is widely viewed as one of the most, if not the most, reprehensible crimes in our society. Any offender disregarding this universal legal and moral reprobation demonstrates such a lack of restraint that the risk of recidivism must be viewed as considerable." *State v. Collins* (June 29, 1999), 3d Dist. No. 14–99–05, 1999 WL 455335, quoting *State v. Daniels* (Feb. 24, 1998), 10th Dist. No. 97APA06–830, 1998 WL 85882.

{¶ 10} Both the legislature and a multitude of courts have acknowledged "the overwhelming statistical evidence supporting the high potential of recidivism among sex offenders whose crimes involve the exploitation of young children." *Daniels,* supra, citing, e.g., *Kansas v. Hendricks* (1997), 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501. In addition, psychiatric evidence may provide sufficient independent support for a sexual-predator adjudication. *Robertson,* 147 Ohio App.3d at 101, 768 N.E.2d 1207. However, this material should generally be reviewed in light of the entirety of evidence presented and the role the psychiatric findings played in the court's overall determination, as courts are generally free to accept or reject the entirety or portions of a psychologist's conclusions. Id. Furthermore, other sexually oriented offenses, some but not all of which resulted in convictions, are properly considered in a sexual-predator determination, as they are relevant to pertinent aspects of a defendant's criminal and social history and are probative of the propensity of an offender to engage in other sexually oriented offenses in the future. See *State v. Anderson* (1999), 135 Ohio App.3d 759, 764, 735 N.E.2d 909.

{¶ 11} In the case sub judice, the trial court had the following information before it, most of which came from the psychological report of Dr. Fabian. At the time of the offense, McKinniss was forty-two years old and his victim was six. In addition, McKinniss was in a position of authority over the victim, as he was her stepfather. Further, McKinniss had a long history of criminal conduct, having spent numerous years incarcerated in both Ohio and Florida and also had a lengthy record of juvenile delinquency. Among the list of crimes committed by McKinniss as an adult were aggravated battery, domestic violence, felonious assault, tampering with a witness, grand theft auto, possession of marijuana, and the sexual-battery conviction underlying this current appeal. Included among his victims were his ex-wives, one of which he cut her arms and face and threatened to kill, and another of which he kicked in the middle of a highway in Florida and "almost ended her life." McKinniss further stated that overall "three girls escaped death. I intended to kill two of the ones I was married to and the other one was the victim in this case (his six-year-old stepdaughter)." Additionally, McKinniss violated his probation in the past and even tested positive for marijuana in 1997, while incarcerated.

{¶ 12} McKinniss admitted that as a child his mother was sexually provocative in his presence and "probably" abused him but not in a sexual manner. He was married four times, each ending in divorce. He also admitted that he was physically abusive to all of his wives, that he controls and punishes, and that he raped all four of them at some point. Further, he admitted that his most recent victim was afraid of him, as was the rest of his family, and that he beat her and

her three brothers on a daily basis although they did not deserve it, including punching them with his fists and hitting them in the face with objects.

{¶ 13} He additionally stated that he has symptoms of obsessive compulsive disorder, which causes him to lie, cheat, manipulate, dominate, and drink. McKinniss was previously diagnosed with bipolar disorder and was hospitalized for psychological treatment and counseling. Moreover, both Dr. Sunbury and Dr. Fabian diagnosed McKinniss as suffering from antisocial personality disorder with psychopathic traits.

{¶ 14} McKinniss also admitted that he fantasized about being anally raped by men and masturbating, often while his fourth wife used anal sex toys on him. He further stated that he fantasized about female correctional officers and of raping women. Although he denied sexually fantasizing about children, he admitted that prior to his incarceration he would look out his window at times into other individual's homes in an attempt to view people having sex and that he collected female underwear, often taking them without permission when they were hanging out to dry. McKinniss further admitted that he kissed his babysitter and fondled her breasts when he was approximately six years old. He also stated that he had sexual intercourse with 107 women and that he viewed pornographic magazines. In addition, McKinniss admitted to having had sex with a sixteen-year-old and to flirting with babysitters in the past.

{¶ 15} The circumstances involving the sexual battery of his stepdaughter were also considered by the trial court in making its determination that McKinniss be classified as a sexual predator. On several occasions, McKinniss noticed that his six-year-old stepdaughter was watching him have sex with her mother, yet he allowed her to do so and it excited him that she was watching. Not only did he allow the child to witness him engaging in sexual intercourse, he also permitted her to watch her mother masturbate him and perform oral sex on him. In addition, McKinniss had this child perform oral sex on him three times over a month-long period, wherein he ejaculated in her mouth and put her finger, and eventually her entire fist, inside his anal cavity. In explaining why he committed this offense, McKinniss stated, "Maybe it was inflicting pain on someone else? She was a sexual object, the victim."

{¶ 16} Given the aforementioned information, Dr. Sunbury opined that McKinniss was at a high risk to reoffend sexually. However, Dr. Fabian opined that McKinniss was in the middle category to reoffend based upon his clinical evaluation and the results of four psychological tests of McKinniss. Thus, McKinniss asserts that Dr. Fabian's opinion that he was only at a moderate risk of reoffending sexually, which was based largely upon testing, was more scientifically reliable than the method used by Dr. Sunbury, which was solely a clinical diagnosis. Accordingly, McKinniss asserts that the trial court should have relied

upon the results of the tests conducted by Dr. Fabian and that it erred in concluding that he was likely to engage in the future in one or more sexually oriented crimes. We disagree.

{¶ 17} The four tests conducted by Dr. Fabian resulted in the following findings. The Hare Psychopathy Checklist Revised ("Hare PCL–R"), used to assess severe criminal personality, sociopathy, or psychopathy, resulted in a score of 31, placing McKinniss above the required number for a finding of psychopathy. His scores were indicative of pathological lying, definite manipulative behavior, lack of remorse or guilt, definite callous lack of empathy, and some failure to accept responsibility for his actions. His scores on the Hare PCL–R also were indicative of persistent criminality and criminal behaviors, proneness to boredom, a parasitic lifestyle, poor behavioral controls, some lack of realistic long-term goals, impulsivity, and irresponsibility.

{¶ 18} His history was rated through the use of the Rapid Risk Assessment for Sexual Offense Recidivism ("RRASOR"), which is an actuarial risk prediction instrument based upon a population of sex offenders who have been released from prison. Here, 6.5 percent of offenders who received scores similar to that of McKinniss sexually reoffended after ten years from their release from incarceration, which the author of the RRASOR rated in the "low-risk" category.

{¶ 19} The Static–99 was also conducted. This test is similar to that of the RRASOR in that it, too, is an actuarial risk prediction instrument based upon a population of sex offenders who have been released from prison. The results of this test revealed that 16 out of 100 offenders with similar scores to that of McKinniss sexually reoffended fifteen years after their release from custody. The authors of this test placed that score in the "medium-low risk" category for sexually reoffending.

{¶ 20} In addition to these three tests, McKinniss's sex-offender history was rated by the Sexual Violence Risk–20 ("SVR–20"). This assessment test involved the analysis of certain factors in psychological research that have been related and associated to future sex offending. This test revealed some evidence of sexual deviation, that McKinniss was the victim of childhood abuse by his female babysitter, definite evidence of psychopathy, and evidence of mental illness, substance abuse, homicidal ideation, relationship problems, employment problems, past nonsexually violent offenses, past nonviolent offenses, and past supervision failure. Overall, he scored a 26 out of 40, indicating a "moderate-high risk" of committing a future sexual offense.

{¶ 21} Based upon the various categorizations of these tests, low, moderate-low, and moderate-high, in conjunction with his clinical assessment of McKinniss, Dr. Fabian opined that McKinniss was in the middle category of those likely to reoffend sexually. McKinniss maintains that the psychological tests conducted

by Dr. Fabian were more relevant to the determination of his likelihood to reoffend sexually than the clinical diagnosis of Dr. Sunbury. However, as previously noted, all psychological evaluations should generally be reviewed in light of the entirety of evidence presented and the role they played in the court's overall determination. *Robertson,* 147 Ohio App.3d at 101, 768 N.E.2d 1207.

{¶ 22} In explaining the rationale underlying his opinion at the classification hearing, Dr. Fabian testified about various factors that elevated or lowered the risk McKinniss posed in sexually reoffending. Dr. Fabian testified that the following factors indicated a high risk that McKinniss would sexually reoffend: the age of the victim, his antisocial personality and traits of psychopathy, the negative relationship with his mother, and elements of sexual deviancy. In this regard, Dr. Fabian's report stated that psychopathy and sexual deviance, both of which McKinniss displayed, when both present in an individual were "significantly related to future sex offending." The report further stated that another factor elevating his risk was his prior violent offending.

{¶ 23} To the contrary, the factors listed that lowered his risk of sexually offending in the future included no formal sexual-deviancy diagnosis, no prior sex offenses, no stranger victims, no unrelated victims, no termination from sex-offender treatment, and no multiple victims. However, Dr. Fabian's enumeration of the risk-lowering factors as they pertained to McKinniss ignored admissions made by McKinniss, himself, and contained in Dr. Fabian's report, as well as other facts.

{¶ 24} McKinniss admitted to having raped each of his wives. Whether these rapes were statutorily defined crimes in the states in which they occurred at the time of their commission is unknown. However, forcibly raping anyone is a type of sexual offense. Moreover, the classification guidelines contained in R.C. 2950.09 do not require that the offender be convicted of these offenses, but merely that these offenses occurred. In addition, these offenses involved four women. Thus, the factors pertaining to no prior sex offenses and no multiple victims did not apply to McKinniss and, as such, did not lower the risk he posed. Further, McKinniss was not able to be terminated from a sex-offender program because he was unable to attend such a program, as they apparently were never made available to him, nor did he attempt to gain admission to any such program. Thus, this factor was not truly applicable either and could neither have elevated nor lowered the risk posed by McKinniss.

{¶ 25} Dr. Fabian also testified that McKinniss's age was a risk-lowering factor. Specifically, Dr. Fabian testified that those who commit their first sexual offense before the age of 25 have an elevated risk of sexually reoffending. Dr. Fabian's opinion as to McKinniss in this regard was based upon McKinniss's age, 42, at the time he committed the sexual battery of his stepdaughter, as this was

his first conviction for a sexual offense. However, once again McKinniss admitted to raping each of his wives, one of whom he was married to from 1971 to 1978. McKinniss was born on April 11, 1952, which places his age during his first marriage at approximately 19 to 26. Thus, his first rape occurred sometime between the ages of 19 to 26, significantly close in time to Dr. Fabian's cutoff of age 25 for an elevated risk to sexually reoffend. Moreover, McKinniss's propensity to reoffend came to fruition when he raped his next three wives and committed his most recent offense against his stepdaughter, all of which he openly admitted. Accordingly, given McKinniss's admission that he committed other sexual offenses at a much earlier age, the fact that McKinniss was not *convicted* of a sexual offense until later in life does not diminish his likelihood to reoffend based upon his age at the time of his first conviction for a sexual crime.

{¶ 26} In determining whether McKinniss was likely to reoffend sexually, the trial court not only had the reports of Dr. Sunbury and Dr. Fabian, but was also guided by the previously discussed statutory factors enumerated in R.C. 2950.09. McKinniss was fifty-one at the time of the hearing, which the trial court noted as lowering his risk to sexually reoffend. However, he had an extensive criminal record as an adult, many of which involved violent crimes, and a lengthy record of delinquency as a child and many of these crimes were violent, both of which would indicate a high risk of reoffending. Further, McKinniss was diagnosed with antisocial personality disorder with psychopathic traits, had a history of bipolar disorder, and was a recovering alcoholic and marijuana addict (including having used marijuana while he was incarcerated on the instant offense). Moreover, McKinniss displayed an aggressive pattern of behavior with his victim, who was only six years old, including physical and sexual abuse. In fact, McKinniss referred to the victim as a "sexual object."

{¶ 27} The trial court also listed other factors contributing to McKinniss's conduct. Included in this list were McKinniss's unstable early family life, his sexual fantasies about being raped by men and raping women, and that he made no attempt to gain admission to a sex-offender program. In addition, the trial court noted that Dr. Fabian's report indicated that McKinniss displayed no remorse or feeling of guilt for having sexually assaulted his stepdaughter. However, McKinniss maintains that the trial court improperly relied upon a remark he made in response to a perceived misstatement of the facts by the prosecutor in determining that he was likely to reoffend sexually. To the contrary, the court only briefly noted this outburst in its discussion of his difficulty in accepting responsibility for his act. Thus, his remark appeared to be of merely minor consequence to the trial court's conclusion that McKinniss was likely to engage in the future in one or more sexually oriented crimes.

{¶ 28} In reviewing the entire record, including the two psychological reports, the results of the various psychological tests, the admissions made by McKinniss, and the circumstances surrounding the sexual-battery conviction, we do not conclude that the trial court erred in finding by clear-and-convincing evidence that McKinniss is a sexual predator. Accordingly, both assignments of error are overruled.

{¶ 29} For these reasons, the judgment of the Common Pleas Court of Crawford County, Ohio, is affirmed.

Judgment affirmed.

WALTERS and CUPP, JJ., concur.