DECISION.
{¶ 1} On May 12, 2003, defendant-appellant Iona Nyel hid in the woods at Mitchell Memorial Park before attacking a young woman who was jogging along a park trail. Nyel dragged his victim to a creek bed, vaginally and orally raped her, and strangled her to unconsciousness, leaving her for dead. Before leaving the woman, he defecated in the area. Witnesses stated that they had seen Nyel leave the park that day and walk to his van parked on a side street. A park ranger reported that she had seen Nyel at the park the day before, loitering, and that she had ordered him to leave. Several days after the attack, Nyel was captured. In explanation for why he attacked the jogger, Nyel stated that he had been high on crack cocaine for the first time.
 {¶ 2} Nyel pleaded guilty to two counts of rape in violation of R.C. 2907.02(A)(2) and felonious assault in violation of R.C.2903.11(A)(1). On September 18, 2002, the trial court imposed the maximum sentence for each conviction and ordered that the sentences be served consecutively. The trial court also adjudicated Nyel a sexual predator, following a classification hearing at which the court considered the presentence-investigation report. Bringing forth five assignments of error, Nyel now appeals the imposition of his sentences and his sexual-predator classification.
 {¶ 3} In his first assignment of error, Nyel maintains that the trial court's imposition of the maximum sentences for the rape convictions was contrary to law. We disagree.
 {¶ 4} Pursuant to R.C. 2929.14(C), a trial court may impose the maximum sentence upon (1) offenders who have committed the worst forms of the offense; (2) offenders who pose the greatest likelihood of recidivism; (3) certain major drug offenders; and (4) certain repeat violent offenders. When imposing the maximum sentence, the trial court must make one of the R.C. 2929.14(C) findings, and it must give reasons supporting its finding.[1]
 {¶ 5} At the sentencing hearing in this case, the trial court heard testimony from the victim's mother. The mother stated that her daughter had been traumatized from the rape and was still suffering emotionally and physically. The mother said that her daughter was still so upset that her hair was falling out. After hearing from the mother, the trial court noted that the victim had suffered "serious physical and psychological harm" and might never be "normal" again. The court then read the following from the victim-impact statement: "I don't think I will ever understand why he did this to me. I used to go to Mitchell Park several times a week for the past ten years. I don't think I can ever go there again. I was a randomly chosen victim of a violent attack and rape[,] which happened in a safe area in the middle of the day with several other people nearby. That is what continues to scare me * * * I thought I would definitely die that day. He strangled me so hard [that] even when I tried to cooperate, I still thought I would suffocate and die."
 {¶ 6} Next, the trial court reviewed the circumstances of the crime. The trial court noted that Nyel had staked out the park the day before, looking for a victim, and had then come back the next day to hide in the woods. He took his victim from a jogging trail at midday, raped her vaginally and orally, attempted to rape her anally, and then strangled her into unconsciousness. Nyel then defecated in the area and fled from the park, leaving the victim unconscious. The victim had bruises and lacerations on her neck, back and face, and her tongue had been chewed up and bitten through. When Nyel was arrested, the police found pornography at his home. "Based on th[o]se factors," the trial court imposed the maximum sentences.
 {¶ 7} The trial court indicated orally at the sentencing hearing and on the felony sentencing worksheet that Nyel had committed the worst form of the offense. Nyel now maintains that although this was not a "nice rape," it was not the worst form of rape because the victim was not a child under the age of thirteen, no weapons were used, and no threats were made to kill the victim prior to or after the rapes.
 {¶ 8} When determining whether an offender has committed the worst form of the offense, the trial court must look at the totality of the circumstances.[2] The trial court, in determining the severity of the crime, may also consider the impact of the crime on the victim.[3]
Here, the record reveals that the trial court reviewed the circumstances of the crime, indicating that the victim had suffered serious physical and psychological harm, that the crime was violent, and that the rape was premeditated. While a child was not the victim in this instance, nor were any weapons used, this rape was particularly brutal and predatory. Further, Nyel's act of leaving the victim unconscious in the creek bed, not knowing whether she was dead or alive, indicated a cold indifference to human life. These factors, we are convinced, amounted to one of the worst forms of the offense.
 {¶ 9} Although the trial court found that Nyel had committed the worst form of the offense, it also indicated orally at the sentencing hearing and on the felony sentencing worksheet that Nyel had the greatest likelihood of reoffending. Again, the reasons for this finding were the circumstances surrounding the rape and felonious assault. We hold that this finding was supported in the record even though Nyel did not have any prior convictions. Nyel's crime was particularly violent and predatory. He had staked out the park the day before and then returned, parked his car on a side street, and hid in the woods, waiting for the victim, whom he raped and then strangled into unconsciousness.
 {¶ 10} In light of the manner in which Nyel committed the offenses and the impact on the victim, we cannot say that the trial court abused its discretion in imposing the maximum sentence. Accordingly, the first assignment of error is overruled.
 {¶ 11} In his second assignment of error, Nyel asserts that the imposition of consecutive sentences was contrary to law. Because we conclude that the trial court did not verbalize the requisite findings at the sentencing hearing, we must vacate the consecutive sentences and remand to the trial court for further consideration of this issue.
 {¶ 12} Pursuant to R.C. 2929.14(E)(4), a trial court may order that multiple sentences be served consecutively after finding that consecutive sentences are necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender posed to the public. The court must also find that one of the following factors exists: (1) the offender was awaiting trial or sentencing on another offense, was under community control, or was under post-release control; (2) the harm caused was so great or unusual that no single prison term would adequately reflect the seriousness of the offender's conduct, (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.[4] When imposing consecutive sentences, the trial court must make the appropriate statutory findings, and it must give reasons supporting those findings pursuant to R.C. 2929.19(B)(2)(c).[5]
 {¶ 13} While this appeal was pending, the Ohio Supreme Court decided State v. Comer.[6] In Comer, the court held that pursuant to R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), prior to imposing consecutive sentences, the trial court must make the statutorily required findings and provide the rationale supporting those findings on the record at the sentencing hearing.[7] The court explained that "on the record" requires that "oral findings must be made at the sentencing hearing."[8]
In Comer, the trial court had imposed consecutive sentences, but did not make the statutorily required findings and give reasons for those findings at the sentencing hearing. Instead, the trial court had included its findings and supporting rationale in the judgment entry sentencing Comer.
 {¶ 14} With respect to the revised sentencing guidelines enacted by Am.Sub.S.B. No. 2 in 1996, this court has previously held that the trial court complies with R.C. 2929.14(E)(4) and 2929.19(B)(2)(c) if it marks the statutorily required findings on the felony sentencing worksheet and provides its reasons in writing on that worksheet.[9] We have not required that the trial court verbalize its findings and reasons at the sentencing hearing.[10] The Comer decision overrules such cases.[11] Accordingly, prior to imposing consecutive sentences, the trial court must now verbalize the statutorily required findings and orally give reasons supporting those findings at the sentencing hearing. Simply marking them on the felony sentencing worksheet does not comply with the sentencing guidelines.
 {¶ 15} Here, the record reveals that the trial court did not verbalize any of the requisite findings at the sentencing hearing. Instead, the trial court made those findings on the felony sentencing worksheet. As we have discussed, under Comer, it is now necessary for the trial court to verbalize the statutorily required findings and give reasons for those findings at the sentencing hearing. Thus, we must vacate the imposition of consecutive sentences here and remand to the trial court for further proceedings consistent with this decision and the law. The second assignment of error is well taken.
 {¶ 16} In his third assignment of error, Nyel argues that his right to due process guaranteed by the state and federal constitutions was violated when the trial court held a sexual-offender-classification hearing without providing the notice required by R.C. 2950.09(B)(2). R.C. 2950.09(B)(2) provides that "the court shall give the offender * * * notice of the date, time, and location of the [sexual-offender-classification] hearing." In State v. Gowdy,[12] the Ohio Supreme Court held that this notice requirement is mandatory, that failure to provide such notice constitutes plain error, and that notice of the sentencing hearing is not sufficient notice of the sexual-offender-classification hearing.[13]
 {¶ 17} Here, although the trial court provided notice to Nyel and his counsel at Nyel's plea hearing that sentencing would occur on September 18, 2002, it did not provide notice that the sexual-offender-classification hearing would occur on that date as well. But, on September 18, 2002, Nyel and his counsel signed a "Waiver of the Notice of Sexual Offender Classification Hearing," which stated that Nyel wished to proceed with the classification hearing without notice and that he had the right at the hearing to testify, present evidence and call expert witnesses. We note that the waiver was in writing and made knowingly and voluntarily. Prior to the classification hearing, the trial court noted that both Nyel and his counsel had signed the waiver. The court then inquired if both were ready to proceed with the classification hearing. Nyel's counsel responded in the affirmative, indicating that he had informed Nyel that the court could classify him under one of three different categories of sexual offenders and had explained each category to him. Because it is evident that Nyel voluntarily and knowingly waived his statutory right to notice of the classification hearing, he cannot now claim the absence of notice as error. Accordingly, the third assignment of error is overruled.
 {¶ 18} In his fourth assignment of error, Nyel asserts that the trial court erred in adjudicating him a sexual predator. We are unpersuaded.
 {¶ 19} A sexual predator is defined in R.C. 2950.01(E) as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Nyel satisfied the first prong of the sexual-predator definition, as he had pleaded guilty to two counts of rape, which were classified as sexually-oriented offenses under R.C.2907.02. Thus, the issue at the sexual-offender-classification hearing was whether Nyel was likely to commit future sexually-oriented offenses.
 {¶ 20} At a classification hearing, the state must prove by clear and convincing evidence that the offender is likely to engage in the future in one or more sexually-oriented offenses.[14] R.C. 2950.09(B)(3) sets forth ten non-exclusive factors for the trial court to consider in determining the offender's propensity to engage in future sexually-oriented offenses and, thus, whether the offender should be classified as a sexual predator. When considering these factors, the court is not constrained by rigid rules requiring a certain number of findings to support a sexual-predator classification. Instead, the court should apply "the enumerated factors and consider the relevance, application, and persuasiveness of individual circumstances on a case-by-case basis."[15] The trial court has significant discretion in evaluating factors that may be relevant to its recidivism determination and such determinations are to be afforded great deference.[16] Thus, the court has discretion to determine what weight, if any, it will assign to each statutory guideline.[17]
 {¶ 21} In this case, the state relied on the facts of the case and the presentence-investigation report, which included a victim-impact statement, a statement from the victim's mother, and statements from the two arresting officers. Nyel addressed the court, apologizing for his actions, but he did not present any witnesses to testify about his likelihood of reoffending. Nyel's trial counsel relied on the arguments that he made at the sentencing hearing. At the conclusion of the classification hearing, the trial court adjudicated Nyel a sexual predator, stating, "There's no doubt about it, without going through the facts again, that you demonstrated a pattern of abuse, that you displayed cruelty which is hard to believe that one human being could do on another human being. You raped this girl twice. You tried to do it a third time. You almost killed her. You have destroyed her life. I have no doubt by clear and convincing evidence that you are a sexual predator."
 {¶ 22} The record demonstrates that the trial court relied on the cruelty that Nyel displayed during the rape.[18] Specifically, Nyel strangled his victim into unconsciousness during the attack and left her for dead. The trial court also gave significant weight to the nature of Nyel's sexual conduct, another factor it was entitled to consider.[19]
The court noted that this rape had been particularly violent, that Nyel had raped the victim twice and had attempted to rape her a third time, that the rape had occurred in the middle of the day, and that it had been premeditated. We conclude that the circumstances of this particular rape, specifically its predatory nature, and the cruelty displayed during the rape, despite the fact that Nyel had no prior convictions for sexually-oriented offenses, clearly and convincingly supported the sexual-predator classification. "Circumstances within the underlying offense are often especially indicative of the offender's likelihood to reoffend sexually, and the weight of such evidence can, without more, support the designation of sexual predator by clear and convincing evidence."[20]
 {¶ 23} Within the fourth assignment of error, Nyel, citing Statev. Eppinger,[21] also argues that the trial court should have appointed an expert to assist it in determining whether he was likely to reoffend, especially in light of the fact that he had no criminal record. A trial court has the discretion, when requested, to appoint an expert to assist in determining whether an offender will reoffend.[22] But we note that Nyel did not request that an expert be appointed. We can find no case law or statutory authority for the premise that a trial court must appoint an expert witness to assist the court in its determination of whether the offender is a sexual predator, absent a request by the offender.[23] In fact, the Ohio Supreme Court in Eppinger specifically held that expert testimony was not required for all first-time offenders. Finally, we are convinced that there were enough factors present in this case for the trial court, on its own, to make the determination that Nyel was a sexual predator.
 {¶ 24} Accordingly, the fourth assignment of error is overruled.
 {¶ 25} In his fifth and final assignment of error, Nyel contends that he received ineffective assistance of counsel at his sexual-predator hearing. Specifically, Nyel argues (1) that his trial counsel did not object to the classification hearing despite the fact that Nyel was not given any notice; (2) that trial counsel should have requested that an expert be appointed; and (3) that trial counsel failed to present any evidence at the hearing.
 {¶ 26} In order to prevail on a claim of ineffective assistance of counsel, it must be demonstrated that trial counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced by counsel's performance.[24] With respect to signing the waiver of notice in this case, we cannot say that trial counsel's performance was unreasonable. Here, trial counsel put on the record that Nyel wanted to sign the waiver and proceed with the classification hearing that day. Further, as we have discussed, Nyel knowingly and voluntarily signed the waiver.
 {¶ 27} Nyel also claims that his counsel was ineffective for failing to request the appointment of an expert witness to testify at the sexual-predator hearing. Upon review of the record, we note that trial counsel's decision not to call an expert witness can be considered "sound trial strategy,"[25] in light of the fact that this rape was particularly violent and predatory. Additionally, Nyel was made aware, when he signed the "Waiver of Notice of the Sexual Predator Hearing," that he had the right to call an expert witness. Nyel chose not to have his attorney do so and instead insisted on proceeding with the hearing that day.
 {¶ 28} Nevertheless, even if we were to conclude that counsel was ineffective for not requesting that an expert witness be appointed, Nyel has not demonstrated that he was prejudiced by his attorney's omission. The R.C. 2950.09(B)(3) factors noted by the trial court amply supported the determination that Nyel was likely to reoffend.
 {¶ 29} Finally, we hold that counsel's performance at the classification hearing did not fall below an objective standard of reasonableness. While trial counsel did not present any additional evidence at the hearing, we note that the hearing took place immediately after the sentencing hearing. The trial court noted that it was taking into account the remarks that had been made during sentencing. At the sentencing hearing, Nyel's counsel had noted that Nyel had no prior convictions, that he was remorseful, and that he was high on crack cocaine for the first time when the rape occurred, all factors that could have weighed against a sexual-predator classification.
 {¶ 30} The fifth assignment of error is overruled.
 {¶ 31} In sum, we vacate the sentences to the extent that the two sentences for rape and the sentence for felonious assault are to be served consecutively, and we remand this case to the trial court for further consideration of this issue. In all other respects, we affirm the judgment of the trial court.
Sentences vacated in part and cause remanded.
Doan, P.J., and Painter, J., concur.
[1] See R.C. 2929.19(B)(2)(d); State v. Edmonson (1999),86 Ohio St.3d 324, 328-329, 715 N.E.2d 131.
[2] See State v. Garrard (1997), 124 Ohio App.3d 718, 722,707 N.E.2d 546.
[3] See State v. White (1999), 135 Ohio App.3d 481, 734 N.E.2d 848.
[4] R.C. 2929.14(E)(4)(a) through (c).
[5] Accord State v. Edmonson, supra.
[6] 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473.
[7] Id at ¶ 20.
[8] Id. at ¶ 26.
[9] State v. Phillips (June 18, 1997), 1st Dist. No. C-960898.
[10] State v. Connors (Aug. 28, 1998), 1st Dist. No. C-970407;Phillips, supra; State v. Broe, 1st Dist No. C-020521, 2003-Ohio-3054.
[11] Comer, supra, at ¶ 18.
[12] 88 Ohio St.3d 387, 2000-Ohio-355, 727 N.E.2d 579.
[13] Id. at 399, 2000-Ohio-355, 727 N.E.2d 579. We note that the notice requirement for the sexual-offender-classification hearing was originally included in R.C. 2950.09(B)(1) when the Gowdy court issued its decision. Since then, R.C. 2950.09 has been amended by Am.Sub.S.B. No. 3, effective January 1, 2002, which has moved the notice provision for the sexual-offender-classification hearing to R.C. 2950.09(B)(2).
[14] See R.C. 2950.09(B)(3).
[15] State v. Robertson, 147 Ohio App.3d 94, 98, 2002-Ohio-494,768 N.E.2d 1207, ¶ 20 (citations omitted).
[16] Id. at ¶ 44, 768 N.E.2d 1207, citing State v. Cook (1998),83 Ohio St.3d 404, 426, 700 N.E.2d 570.
[17] See State v. Thompson, 92 Ohio St.3d 584, 2001-Ohio-1288,752 N.E.2d 276.
[18] See R.C. 2950.09(B)(3)(i).
[19] See R.C. 2950.09(B)(3)(h).
[20] Robertson, supra, at ¶ 25.
[21] 91 Ohio St.3d 158, 2001-Ohio-247, 743 N.E.2d 881.
[22] Id. at syllabus.
[23] State v. Clark, 4th Dist. No. 02CA684, 2003-Ohio-3304, ¶ 15.
[24] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052.
[25] Id. at 689, 104 S.Ct. 2052.