DECISION AND JUDGMENT ENTRY
{¶ 1} Clifford Longnecker appeals the Washington County Common Pleas Court's sexual predator adjudication and judgment sentencing him to a four-year prison term. He asserts that clear and convincing evidence does not exist to support the trial court's finding that he is a sexual predator and that the trial court's four-year prison sentence is contrary to law.
 {¶ 2} Because the record contains clear and convincing evidence to support the trial court's sexual predator adjudication, we disagree with appellant. Additionally, because the record shows that the trial court complied with the statutory sentencing procedures and properly exercised its discretion in electing to impose a four-year prison term, we disagree with appellant that his four-year prison term is contrary to law. Therefore, we overrule appellant's assignments of error and affirm the trial court's judgment.
 {¶ 3} In June of 2000, the Washington County Grand Jury returned an indictment that charged the seventy-year-old appellant with two counts of gross sexual imposition involving a female under the age of thirteen, in violation of R.C. 2907.05(A)(4). Appellant initially pled not guilty, but he subsequently pled no contest to one count of gross sexual imposition. In exchange for appellant's no contest plea, the state agreed to dismiss the second count, to recommend that appellant not receive a prison sentence, and to support early release, if appellant received a prison sentence.
 {¶ 4} In entering his no contest plea, appellant stipulated to the following facts: "During the summer of 1999 the child of a tenant was at [appellant's] house. During the time that she was there * * * [appellant] touched the vaginal lips of this child for purposes of sexual gratification."
 {¶ 5} Following his no contest plea, the trial court held a combined sentencing and sexual predator hearing. At that hearing, appellant claimed that he pled no contest because he was afraid that his wife would have a "nervous breakdown," if the case went to trial. In explaining the incident when he touched the victim's vagina, appellant stated that the victim had pulled down her pants to show him moles or birthmarks and that he inadvertently touched her vagina when he helped her pull up her pants. Appellant asserted that during the taped confession with a sheriff's detective, he was confused and he did not intend to admit that he touched the victim for purposes of sexual gratification.
 {¶ 6} In December of 2000, the trial court adjudicated appellant a sexual predator and sentenced him to four years in prison. The court noted that the gross sexual imposition conviction was appellant's first felony conviction but determined that the shortest prison term was not appropriate "because a shorter sentence would demean the seriousness of the offense and the impact upon the victim."
 {¶ 7} Appellant then appealed the trial court's sexual predator adjudication and sentence. We reversed the court's judgment adjudicating appellant a sexual predator because the record did not contain clear and convincing evidence to show that appellant is likely to re-offend. We also made reference to the model sexual predator classification hearing guidelines set forth in State v. Eppinger (2001), 91 Ohio St.3d 158,743 N.E.2d 881.[1] Therefore, we remanded the matter to the trial court for further proceedings.
 {¶ 8} We also reversed and remanded the trial court's judgment sentencing appellant to four years imprisonment. We determined that the record did not indicate that the court considered either R.C. 2929.12 or R.C. 2929.13 before determining that a prison sentence was appropriate. We also concluded that the record did not provide an adequate basis for appellate review. Thus, we remanded the matter to the trial court.[2]
 {¶ 9} Following our remand, the trial court conducted another sexual predator classification and sentencing hearing. At the hearing, the victim's mother stated that she and her family rented a house from appellant and that appellant became "like a grandpa" to her children. She explained that the children frequented his home and appellant would take them for walks, drives in the country, and to K-Mart to buy toys. In May of 1998, the family moved from appellant's house and did not inform appellant where they were moving. Appellant, however, located the family's new home and continued to visit with the children. The family moved two more times, and each time, appellant discovered where they had moved and continued visiting with the children.
 {¶ 10} The victim's mother stated that the victim has "not been doing real good" since the investigation began. She explained that the victim was held back in school, was distant, and lost concentration in class. She further stated that the victim is "petrified" of appellant.
 {¶ 11} Appellant retained a psychologist, Dr. J. Michael Harding, to evaluate his recidivism risk for sexually oriented offenses. Dr. Harding administered the Minnesota Sex Offender Screening Tool — Revised (MnSORT-R), an actuarial tool developed around 1996 for measuring the recidivism risk for sexually oriented offending that is standardized on sex offenders being held and/or released from the Minnesota Correctional System. The test has followed offenders for four to six years. Appellant scored a negative five, the lowest possible score. According to Dr. Harding, appellant's score "falls at the lower-most limit of the Low Risk category and is associated with a recidivism risk of 16%." Dr. Harding opined that appellant's "risk of sex offense recidivism within a six-year period is 16% or less." He further stated that appellant's "history is positive for none of the twelve clinical risk factors known to be associated with sexual offending[3] and only two of nine clinical risk factors specific to sexual offending."[4]
Thus, Dr. Harding concluded that "[appellant's] actual recidivism risk is lower than 16%." However, Dr. Harding stated that he "would be reluctant to allow a child of mine or any — any child that I was concerned about, opportunities to spend a great deal of time alone with [appellant]." He stated that if he had a young daughter and if he lived next door to appellant, he would "want to educate" his daughter, but that he would not be able to do that unless he knew of appellant's history.
 {¶ 12} Washington County Sheriff's Detective Mark Warden testified that he interviewed appellant. During the interview, appellant admitted that he had touched the victim's vaginal area. He stated that he also may have touched her on other occasions, but that he could not recall them. He advised the detective that he may have touched her "several" times, but he "never made a habit of it." He gave the following explanation for the one occasion that he recalled: The victim pulled down her pants to show appellant her birthmarks; he touched her vagina, explaining that he "was just caressing her, whatever." He stated that he "suppose[d]" he felt pleasure from touching her. When the detective questioned appellant whether the victim's statement that appellant placed his finger inside her vagina was possible, appellant stated that he would not "intentionally" have done such a thing.
 {¶ 13} At the conclusion of the hearing, the trial court found appellant to be a sexual predator. To support its sexual predator finding, the court determined that the following evidence showed clearly and convincingly that appellant is likely to re-offend: (1) the victim was between six and nine at the time of the offense; (2) appellant was in his late sixties; (3) the nature of appellant's conduct — specifically, that he "exhibited a pattern whereby he cultivated a relationship with the victim to the point that they were as close as grandparents and grandchildren are, that [appellant] took advantage of and used this close, almost familial relationship, and `groomed' the victim"; (4) appellant minimized and denied his deviant behavior; (5) appellant attempted to blame the victim, calling her "promiscuous"; (6) appellant appeared to have an unhealthy relationship with the victim as shown by his tree-carving of a heart that contained her initials; and (7) appellant actively pursued the victim by re-locating her family after they had moved. The trial court noted the opinion of appellant's expert but determined that "the testing on which the report's conclusions were based were relatively new and had not been proven over a lengthy period of time and that the studies were not sufficiently conclusive."
 {¶ 14} The court then conducted the sentencing hearing. At that hearing, the victim's mother testified that appellant's actions have "damaged [the victim] in a way she may never heal." The victim's mother explained that she trusted appellant and that he perverted that trust.
 {¶ 15} The trial court subsequently sentenced appellant to four years imprisonment. In so doing, the court considered the seriousness and recidivism factors set forth in R.C. 2929.12 and found that the following factors indicated that the crime was more serious: (1) the victim's young age at the time of the offense exacerbated the mental injury that she suffered; (2) the victim suffered serious psychological harm as a result of the offense — the victim's mother stated that the victim needed counseling for a significant period of time in order to cope with the effects of appellant's conduct; (3) appellant's relationship with the victim facilitated the offense — appellant "essentially made himself a surrogate grandparent and used this relationship to facilitate the offense." The court did not find any factors to indicate that the crime was less serious than the norm. The court found that the following factors indicated that appellant is more likely than not to recidivate: (1) he did not display genuine remorse; and (2) he blamed the victim. The court further found that the factors supporting its sexual predator determination also supported its finding that appellant is more likely than not to recidivate.
 {¶ 16} The court determined that appellant's poor health and his significant law-abiding life indicated that he is less likely to recidivate. Nevertheless, the trial court determined that a prison term is consistent with the purposes and principles of sentencing.
 {¶ 17} The court noted that this was appellant's first felony conviction, but determined that the minimum sentence would demean the seriousness of the offense and the impact upon the victim and that the minimum sentence would not adequately protect the public from future crime. The court stated that "the victim and her family have suffered significant harm in that the victim has been required to undergo counseling and the family was required to move away from [appellant]." It also noted that "the victim and her family suffered significant harm from the betrayal by [appellant] because of their trust in [appellant]."
 {¶ 18} Appellant timely appealed the trial court's judgment and raises the following assignments of error: "FIRST ASSIGNMENT OF ERROR
— Mr. Longnecker's right to due process was denied when the trial court adjudicated him a sexual predator, when that finding was against the manifest weight of the evidence. SECOND ASSIGNMENT OF ERROR — The trial court violated Mr. Longnecker's right to due process, and erred as a matter of law, when it sentenced him to prison, and for more than the minimum sentence, absent evidence supporting the findings."
 I {¶ 19} In his first assignment of error, appellant argues that the record does not contain clear and convincing evidence to support the trial court's sexual predator adjudication. Appellant asserts that the trial court should not have determined that appellant has a likelihood of re-offending because Dr. Harding's report shows that appellant's recidivism risk is "very low." He further contends that the trial court inappropriately relied upon the following factors when assessing his likelihood to re-offend: (1) the victim's age; (2) appellant's denial of his deviant behavior; (3) his blaming of the victim; (4) his tree-carving of a heart containing the victim's initials; and (5) his following of the family from residence to residence. Appellant further disputes some of the trial court's factual findings: that appellant cultivated the relationship with the victim and that appellant "groomed" the child. We reject all of appellant's arguments.
 {¶ 20} Under R.C. 2950.09, a sentencing court must determine whether a sex offender is a habitual sex offender, a sexual predator, or a sexually oriented offender. See State v. Williams (2000),88 Ohio St.3d 513, 518-19, 728 N.E.2d 342. A "habitual sex offender" is a person who has been convicted of or pleads guilty to a sexually oriented offense and who previously has been convicted of or pleaded guilty to one or more sexually oriented offenses. Id. (citing R.C. 2950.01(B)). A "sexual predator" is a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Id. at 518-19 (citing R.C. 2950.01(E)). A sexually oriented offender is a person who has committed a "sexually oriented offense" as defined in R.C. 2950.01(D), and does not meet the definition of either a habitual sex offender or sexual predator." Id. at 519. Habitual sex offenders, sexual predators, and sexually oriented offenders are subject to periodic registration requirements, but only habitual sex offenders and sexual predators are subject to community notification requirements. See, generally, id.; R.C. 2950.11.
 {¶ 21} Here, the trial court chose to classify appellant as a sexual predator. As previously stated, a sexual predator is a person who has been convicted of, or pled guilty to, committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. R.C. 2950.01(E); State v. Eppinger (2001),91 Ohio St.3d 158, 163, 2001-Ohio-247, 743 N.E.2d 881. Before a court may adjudicate an offender as a sexual predator, the state must present clear and convincing evidence that the offender committed a sexually oriented offense and that the offender is likely to commit future sexually oriented offense(s). Eppinger, 91 Ohio St.3d at 163.
 {¶ 22} "Clear and convincing evidence" is evidence that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. See, e.g., id.; Cross v. Ledford
(1954), 161 Ohio St. 469, 477, 120 N.E.2d 118. "`It does not mean clear and unequivocal.'" Eppinger, 91 Ohio St.3d at 164 (quoting Cross,161 Ohio St. at 477). The clear and convincing evidence standard is considered a higher degree of proof than a mere "preponderance of the evidence," the standard generally utilized in civil cases. However, it is less stringent than the "beyond a reasonable doubt" standard used in criminal trials. See State v. Schiebel (1990), 55 Ohio St.3d 71, 74,564 N.E.2d 54; Cross, paragraph three of the syllabus.
 {¶ 23} When reviewing whether "clear and convincing evidence" supports the trial court's decision, we must examine the record and ascertain whether sufficient evidence exists to meet this burden of proof. See In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368,481 N.E.2d 613. This type of review is deferential to the trial court. We will not overturn a trial court's sexual offender classification unless the manifest weight of the evidence fails to support it. Thus, we must affirm the court's judgment if the record contains competent, credible evidence to support it. State v. Noland, Washington App. No. 02CA28, 2003-Ohio-1386; see, also, Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273; C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. In reviewing the court's decision, we are not permitted to substitute our judgment for that of the trial court. See State v. Purser, Cuyahoga App. No. 81624,2003-Ohio-3345; State v. Alicea, Mahoning App. No. 99CA36, 2002-Ohio-6907.
 {¶ 24} Former R.C. 2950.09(B)(2)[5] sets forth a non-exhaustive list of factors that the trial court must consider when determining whether an offender should be classified as a sexual predator. State v.Thompson (2001), 92 Ohio St.3d 584, 587-88, 752 N.E.2d 276. Those factors include the following: (1) the offender's age; (2) the offender's prior criminal history regarding all offenses, including, but not limited to, all sexual offenses; (3) the age of the victim of the sexually oriented offense for which sentence is to be imposed; (4) whether the sexually oriented offense for which sentence is to be imposed involved multiple victims; (5) whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting; (6) if the offender previously has been convicted of or pleaded guilty to a criminal offense, whether the offender completed any sentence imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders; (7) any mental illness or mental disability of the offender; (8) the nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse; (9) whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty; and (10) any additional behavioral characteristics that contribute to the offender's conduct.
 {¶ 25} Although R.C. 2950.09(B) provides a framework for determining whether an offender is a sexual predator, the factors "do not control a judge's discretion." Thompson, 92 Ohio St.3d at 587. Instead, a trial court may "consider all relevant factors" and possesses "discretion to determine what weight, if any," to assign to each factor. Id. at 587-88. R.C. 2950.09(B)(2) "does not divest a court of its fact-finding powers in assessing the relevancy of each factor." Id. at 588. This "interpretation [of the statute] makes sense because determining recidivism is at best an imperfect science and while the guidelines set forth potentially relevant factors, some may not be applicable in every case." Id. at 588.
 {¶ 26} Thus, a court is under no obligation to "tally up" the R.C.2950.09(B)(2) factors in any particular fashion. State v. Mollohan (Aug. 19, 1999), Washington App. No. 98CA13. A trial court may find an offender to be a sexual predator "even if only one or two statutory factors are present, so long as the totality of the relevant circumstances provides clear and convincing evidence that the offender is likely to commit a future sexually-oriented offense." State v. Clutter (Jan. 28, 2000), Washington App. No. 99CA19; see, also, State v. Randall (2001),141 Ohio App.3d 160, 166, 750 N.E.2d 615. If the enumerated factors indicate that an offender is likely to commit a future sexual offense, a trial court may designate even a first time offender a sexual predator.State v. Meade (Aug. 30, 1999), Scioto App. No. 98CA2566; State v. Dunn
(June 17, 1998), Pickaway App. No. 97CA26. However, while "even one sexually oriented offense is reprehensible and does great damage to the life of the victim, R.C. Chapter 2950 is not meant to punish a defendant, but instead, `to protect the safety and general welfare of the people of this state.' R.C. 2950.02(B)." Eppinger, 91 Ohio St.3d at 165.
 {¶ 27} Additionally, a trial court should discuss on the record the particular evidence and factors upon which it relies to support its decision that recidivism is likely. Eppinger, 91 Ohio St.3d at 166-67. However, a trial court is not required to express its reasoning or make explicit findings on all criteria listed in the statute. It need only consider and address the relevant factors. Noland, supra.
 {¶ 28} In this case, appellant asserts that the evidence does not clearly and convincingly show that he is likely to re-offend. He argues that Dr. Harding's report and testimony show that he has an extremely low risk of committing future sexually oriented offenses and that, in the face of this evidence, the trial court incorrectly determined that he has a likelihood of re-offending. We disagree. "Whether an offender is likely to re-offend sexually is not bound by or couched in terms of recidivism test results, but is instead defined by the application and examination of statutory factors and consideration of relevant circumstances and evidence on a case-by-case basis." State v. Robertson (2002),147 Ohio App.3d 94, 102, 768 N.E.2d 1207 (rejecting the defendant's claim that a twenty-percent probability of re-offending is sufficient to rebut the concept of likely to re-offend sexually). "`[T]he law does not rely solely on psychiatric [or other expert] findings for a determination of recidivism.'" Id. (quoting State v. Arter (Dec. 12, 2001), Logan App. No. 8-01-71). Moreover, "trial courts should not be forced to accept the conclusions of psychologists or psychiatrists as to whether an individual is a sexual predator." State v. Randall (2001), 141 Ohio App.3d 160,166, 750 N.E.2d 615; State v. Clutter (Jan. 28, 2000), Washington App. No. 99CA19 (stating that the trier of fact determines what weight should be given to expert testimony). While Dr. Harding stated that appellant has a low-risk for re-offending, he further stated that he would want to "educate" his daughter if appellant lived next door to him. Therefore, the trial court could reasonably reject Dr. Harding's claim that appellant is unlikely to commit future oriented offenses. In sum, his report is not conclusive or binding upon the trial court.
 {¶ 29} Appellant next claims that the trial court should have determined that his advanced age and poor health will reduce his risk of recidivism. "While his age and physical condition may lead one to conclude that he would not have the desire or opportunity to re-offend sexually, `elderly status and poor health alone does not positively preclude a person, properly motivated, from acting out one's deviant interests.'" State v. Laury, Cuyahoga App. No. 81386, 2002-Ohio-6813; see, also, State v. Doyle, Cuyahoga App. 79981 79982, 2002-Ohio-2574. This is especially true where the perpetrator was elderly and in relatively poor health at the time of the incident. Thus, the trial court was not required to find that appellant is unlikely to recidivate due to his advanced age and poor health.
 {¶ 30} Additionally, appellant's contention that the trial court improperly considered his denial of the offense and blaming of the victim is likewise unavailing. A trial court may consider a defendant's denial of the offense, failure to take responsibility for the deviancy, and blaming of the victim in entering a sexual predator finding. See Statev. Vintson (2001), 144 Ohio App.3d 339, 344, 760 N.E.2d 51; State v.Clark, Pike App. No. 02CA684, 2003-Ohio-1707.
 {¶ 31} Moreover, appellant's perversion of a grandfatherly relationship with the victim and the vast disparity in years between appellant and his victim further support the trial court's sexual predator finding. See, e.g., State v. Keenan, Summit App. No. 20528, 2002-Ohio-754; State v. Malone (Feb. 28, 2001), Summit App. No. 20256. Additionally, "[a]n offender who preys on children * * * may fit the pedophile profile, a class of sex offenders known for their especially high rate of recidivism." Eppinger, 91 Ohio St.3d at 162; State v.Keerps, Washington App. No. 02CA2, 2002-Ohio-4806 (noting that Eppinger
cited a study that revealed recidivism is as high as 72% among child molesters).
 {¶ 32} Appellant's remaining arguments challenging the trial court's factual findings also lack merit. Facts exist in the record to show (1) that appellant cultivated a grandfatherly relationship with the victim and then abused that relationship, (2) that appellant made a tree-carving of a heart with the victim's initials, and (3) that appellant followed the family after each move. The trial court heard the evidence and was in the best position to assign weight and credibility to it.
 {¶ 33} Thus, the totality of the factors sufficiently support's the trial court's sexual predator finding. The victim was approximately sixty years younger than appellant, appellant minimized his responsibility for the offense, he blamed the victim and called her promiscuous, he allowed the victim to look up to him as a grandfather and then sexually abused her, he displayed an unhealthy attachment to the victim, and he molested a young child. Other courts have recognized these factors as valid indicators that an offender poses a recidivism risk and justifies a classification as a sexual predator.
 {¶ 34} While we may have decided this case far differently, our role in this process does not permit us to substitute our judgment for that of the trial court. We decline any invitation to do so. The court applied the proper statutory framework, considered appropriate factors, and the evidence supports the trial court's findings. Accordingly, we overrule appellant's first assignment of error.
 II {¶ 35} In his second assignment of error, appellant contends that the trial court erred by sentencing him to four years in prison. Appellant asserts that the trial court was not required to impose a prison sentence and should have chosen to impose community control sanctions. He argues that due to his poor health and his advanced age, community control sanctions would have been more appropriate. Appellant also contends that a prison term is not appropriate because the factors surrounding the offense show that it was less serious than conduct normally constituting the offense and that he is less likely to commit future crimes. Appellant claims that the trial court incorrectly determined that the following factors show that the offense is more serious than conduct normally constituting the offense: (1) the victim's age; and (2) the victim suffered serious psychological harm. Appellant also disputes the trial court's finding that he is likely to re-offend. He argues that Dr. Harding's report requires a contrary finding. He contends that the court improperly based its finding that he is likely to re-offend upon his lack of remorse, his characterization of the victim as "promiscuous," and Dr. Harding's statement that he would be reluctant to have appellant as a neighbor. Appellant instead argues that he has a low likelihood of re-offending, noting that he had led a law-abiding life up until this offense.
 {¶ 36} A trial court's sentence may be contrary to law, and thus, appealable as of right, if the record does not support the trial court's findings. R.C. 2953.08(A)(4); State v. Johnson, Washington App. No. 01CA5, 2002-Ohio-2576, at ¶ 20. In this context, we neither substitute our judgment for that of the trial court nor do we defer to its discretion as we did in the past. Rather, we look to the record to determine whether the sentencing court (1) considered the statutory factors, (2) made the required findings, (3) relied on substantial evidence in the record to support those findings, and (4) properly applied the statutory guidelines. See Keerps, supra; State v. Dunwoody
(Aug. 5, 1998), Meigs App. No. 97CA11 (citing Griffin Katz, Ohio Felony Sentencing Law (1998Ed.), Section 9.16). Thus, we may not reverse a trial court's sentence unless we find by clear and convincing evidence that the record does not support the sentence or that it is contrary to law. R.C. 2953.08(G)(2); see, also, State v. Holsinger (Nov. 20, 1998), Pike App. No. 97CA605. If we find that the record does not support the sentence, or it is contrary to law, we may remand for new sentencing, modify the sentence, or vacate the sentence. R.C. 2953.08(G)(2).
 {¶ 37} Unless the statute mandates a prison term, a sentencing court has some discretion in deciding what sanction is appropriate to satisfy the purposes and principles of sentencing. R.C. 2929.11 and R.C.2929.12(A). A sentencing court may choose to impose community control sanctions rather than a prison sentence if it finds on the record that a community control sanction would adequately protect the public and punish the offender and that it would not demean the seriousness of the offender's conduct. See R.C. 2929.13(D)(1) and (D)(2). Nevertheless, if the trial court finds that a prison sentence is necessary, third degree felonies are punishable by a definite term of imprisonment of one, two, three, four, or five years. R.C. 2929.14(A)(3).
 {¶ 38} Once a trial court elects to impose a prison sentence, it must then turn to R.C. 2929.14 to determine the length of the sentence. Under R.C. 2929.14(B), courts presume the shortest authorized prison term is appropriate if the offender has not previously served a prison term. R.C. 2929.14(B). See, also, State v. Edmonson (1999), 86 Ohio St.3d 324,325, 715 N.E.2d 131. However, the trial court may impose a longer sentence if it finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime. R.C. 2929.14(B)(2); Edmonson,
supra. The trial court is not required to give specific reasons for finding that the minimum prison term is inappropriate. Edmonson,
syllabus. But, it must note on the record that it engaged in the analysis required under R.C. 2929.14(B) and that it varied from the minimum sentence for at least one of the two sanctioned reasons. Id. at 326.
 {¶ 39} R.C. 2929.12(A) provides a trial court with some discretion in determining "the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code." R.C. 2929.12(A) requires the court to consider specific factors "relating to the seriousness of the conduct," as set forth in R.C.2929.12(B) and (C), and "relating to the likelihood of the offender's recidivism," as set forth in R.C. 2929.12(D) and (E). In addition to the factors specifically enumerated, R.C. 2929.12(B) through (E) allow the trial court to consider any other relevant factors.
 {¶ 40} Under R.C. 2929.12(B), the presence of the following factors requires the trial court to consider the offender's conduct more serious than conduct normally constituting the offense: "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim. (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense. (3) The offender held a public office or position of trust in the community, and the offense related to that office or position. (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice. (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others. (6) The offender's relationship with the victim facilitated the offense. (7) The offender committed the offense for hire or as a part of an organized criminal activity. (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion. (9) If the offense is a violation of section 2919.25 or a violation of section 2903.11,2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children."
 {¶ 41} R.C. 2929.12(C) directs the trial court to consider the following factors as indicating that the offender's conduct is less serious than conduct normally constituting the offense: "(1) The victim induced or facilitated the offense. (2) In committing the offense, the offender acted under strong provocation. (3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property. (4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense."
 {¶ 42} R.C. 2929.12(D) sets forth the factors that lead to a finding that the offender is likely to commit future crimes: "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code. (2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions. (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions. (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse. (5) The offender shows no genuine remorse for the offense."
 {¶ 43} R.C. 2929.12(E) provides that the presence of the following factors indicates that the offender is not likely to commit future crimes: "(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child. (2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense. (3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years. (4) The offense was committed under circumstances not likely to recur. (5) The offender shows genuine remorse for the offense."
 {¶ 44} Here, the record does not clearly and convincingly show that the trial court's four-year prison sentence is legally inappropriate. The trial court followed the appropriate statutory procedure and substantial evidence supports its findings. The trial court considered the R.C. 2929.12
factors and determined that those factors supported a finding that the conduct surrounding appellant's offense was more serious than conduct normally constituting the offense and that appellant has a likelihood of re-offending. The court found that the following factors showed that the offense was more serious than the norm: (1) the victim's age exacerbated the mental injury that she suffered, (2) the victim suffered serious psychological harm, and (3) appellant's grandfatherly relationship with the victim facilitated the offense. Evidence in the record supports the trial court's findings. The court found that the following factors showed that appellant is more likely than not to re-offend: (1) appellant did not display genuine remorse; and (2) he blamed the victim. Again, evidence in the record supports the court's findings.
 {¶ 45} Next, the court found that the minimum sentence would demean the seriousness of the offense and would not adequately protect the public from future crime. In light of this finding, neither community control sanctions nor the minimum sentence would have been appropriate. Therefore, the record does not clearly and convincingly show that the trial court erred by imposing a prison sentence. Nor does the record clearly and convincingly show that the court erred by choosing to impose a four-year term. The trial court followed the proper statutory procedure, made the required findings, and evidence supports the trial court's findings. While we may have chosen to impose a lesser sentence, we may not simply substitute our judgment for that of the trial court.
 {¶ 46} Accordingly, we overrule appellant's second assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
Evans, P.J. Kline, J.: Concur in Judgment and Opinion.
[1] At the time of the trial court's 2000 sexual predator hearing,Eppinger had yet to be decided. Eppinger explained the three objectives of a "model sexual offender classification hearing": "First, it is critical that a record be created for review. Therefore, the prosecutor and defense counsel should identify on the record those portions of the trial transcript, victim impact statements, presentence report, and other pertinent aspects of the defendant's criminal and social history that both relate to the factors set forth in R.C. 2950.09(B)(2) and are probative of the issue of whether the offender is likely to engage in the future in one or more sexually oriented offenses. * * * * Second, an expert may be required * * * to assist the trial court in determining whether the offender is likely to engage in the future in one or more sexually oriented offenses. * * * * Finally, the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism." Id. at 165-66.
[2] Additional facts may be found in our prior opinion. See State v.Longnecker, Washington App. No. 01CA2, 2002-Ohio-3139.
[3] Dr. Harding's report indicated that those twelve factors are (1) antisocial personality diagnosis, (2) psychopathy, (3) adult criminal history, (4) juvenile criminal history, (5) history of violent behavior, (6) failure on conditional release, (7) use of weapons in criminal offense, (8) age below 31 years, (9) substance abuse history, (10) unstable employment history, (11), unstable home environment, and (12) history of childhood physical abuse.
[4] The doctor's report listed those nine factors as (1) paraphilias, (2) premature termination from sex offender program, (3) same-sexed victims, (4) victims under age 13 years, (5) prior sex offense, (6) intimacy deficits, (7) cognitive distortions about sexual assault, (8) stranger victims, and (9) length of sex offending (2-6 years). Appellant tested positive for "victims under age 13 years" and "length of sex offending (2-6 years)."
[5] On January 1, 2002, the General Assembly enacted Senate Bill 3, which re-wrote R.C. 2950.09. Under the current version of the statute, R.C. 2950.09(B)(3) lists the factors, which are substantially the same as the former R.C. 2950.09(B)(2) factors. All references in this opinion are to former R.C. 2950.09(B)(2), unless otherwise indicated.