v.

**A.C., by and Through her Mother and Next Friend M.C., Appellee.**

**No. 2010–CA–001677–MR.**

Court of Appeals of Kentucky.

March 23, 2012.

Discretionary Review Denied by Supreme Court Dec. 12, 2012.

Dennis L. Null, Jr., Mayfield, KY, for appellant.

Robert L. Prince, Benton, KY, for appellee.

Before ACREE, COMBS and KELLER, Judges.

## OPINION

ACREE, Judge:

The sole issue before us is whether the Calloway Circuit Court's award of $6,000,000.00 in punitive damages against Appellant, R.O., is constitutionally exces-

sive. We find it is not. Accordingly, we affirm.

## I. *Facts and Procedure*

On or about December 2007, the Calloway Grand Jury returned an indictment charging R.O.[1] with four counts of first-degree sodomy.[2] The charges stemmed from allegations made by appellee A.C., who was R.O.'s step-granddaughter at the time. A.C. alleged R.O. forced her to perform oral sex on him, and that R.O. touched her chest and pubic areas when she was eleven years old. On December 19, 2008, R.O. pleaded guilty to four amended counts of sexual misconduct. The Calloway Circuit Court sentenced R.O. to twelve months in jail on each count, to run concurrently, conditionally discharged for two years.

Thereafter, on February 3, 2009, A.C., by and through her mother and next friend (Mother), filed a complaint in Calloway Circuit Court alleging R.O. engaged in a deviate sexual relationship with A.C., resulting in severe emotional and physical harm. The complaint sought compensatory and punitive damages.

On January 25, 2010, R.O.'s attorney withdrew representation. The circuit court granted R.O. twenty days to obtain new counsel; R.O. failed to do so. Concurrently, the circuit court entered an Amended Trial and Scheduling Order requiring each party to submit a trial brief, scheduling a pre-trial conference on May 10, 2010, and setting the matter for a jury trial on May 26 & 27, 2010. R.O. failed to submit a trial brief, to attend the pretrial conference, or to appear for trial. Consequently, on May 26, 2010, the circuit court held R.O. in default and proceeded to trial before the court on the issue of damages.[3] A.C. testified via deposition, in rather graphic detail. For our review, it is sufficient to state that R.O. abused A.C. multiple times per week for a substantial span of time during her eleventh year, and in ways civilized societies refuse to tolerate.

Angela Green, a licensed clinical social worker, testified A.C. suffered from symptoms relating to having been sexually assaulted, such as promiscuity, assaultive behavior, self-harming behavior, and suicide attempts. Green explained, as a result of the sexual assault, A.C. endured long-term emotional wounds. Further, Ali Winters, a clinical therapist, testified via deposition that A.C. has classic posttraumatic stress disorder that is specifically related to being a victim of sexual abuse. As a result, A.C. suffers from nightmares, flashbacks, exaggerated startle response, and self-mutilation, including cutting and burning herself. Winters concluded that, because of R.O.'s inappropriate sexual acts with A.C., there was an overwhelming chance that A.C. was permanently changed, for the worse, for life.

At the conclusion of the evidence, the circuit court awarded A.C. $41,238.72 in medical expenses, $2,000,000.00 for emo-

---

1. The incident that gives rise to this case was the sexual abuse of a minor at the hands of a relative. Although the victim is no longer a minor, she only recently reached the age of majority. We have elected to use initials to identify both the victim and the perpetrator of the crime despite the fact no party has made such a request.

2. Both parties claim the Calloway Grand Jury returned an indictment charging R.O. with four counts of first-degree sexual abuse as a result of his conduct towards A.C. However, a careful review of the record reveals the Calloway Grand Jury returned two simultaneous indictments against R.O.: the first indictment charged R.O. with four counts of first-degree sexual abuse against minor child A.J., while the second indictment charged R.O. with four counts of first-degree sodomy against A.C.

3. A.C. waived her right to a jury trial.

tional distress and physical and mental suffering, and $6,000,000.00 in punitive damages.

On June 4, 2010, R.O. filed a motion for a new trial or to alter, amend, or vacate the judgment under Kentucky Rules of Civil Procedure (CR) 59.01(f) and 59.05, respectively, on the grounds that the punitive damages award was excessive and not sustained by sufficient evidence. The circuit court denied R.O.'s motion. R.O. promptly appealed.

## II. *Standard of Review*

■ We review the constitutionality of punitive damages *de novo*. *Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920, 931 (Ky.2007); *McDonald's Corporation v. Ogborn*, 309 S.W.3d 274, 297 (Ky.App. 2009).[4]

## III. *Analysis*

R.O. seeks to set aside the punitive damages award on the ground that it is grossly excessive. Specifically, R.O. contends the award violates the second and third guideposts set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568, 116 S.Ct. 1589, 1595, 134 L.Ed.2d 809 (1996).[5] We disagree.

■ Punitive damages function "to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *Gore*, 517 U.S. at 568, 116 S.Ct. at 1595; *Kentucky Farm Bureau Mut. Ins. Co. v. Rodgers*, 179 S.W.3d 815,

826 (Ky.2005) (Wintersheimer, J., dissenting). "Only when an award can fairly be categorized as 'grossly excessive' in relation to those interests does it enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment." *Gore*, 517 U.S. at 568, 116 S.Ct. at 1595 (citing *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 456, 113 S.Ct. 2711, 2719, 125 L.Ed.2d 366 (1993)). As this Court has previously framed the question, "What constitutes a 'grossly excessive' award?" *McDonald's*, 309 S.W.3d at 298.

In answering this question, the United States Supreme Court established three guideposts to aid reviewing courts, namely:

(1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418, 123 S.Ct. 1513, 1520, 155 L.Ed.2d 585 (2003) (citing *Gore*, 517 U.S. at 575, 116 S.Ct. at 1599); *see also Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 53 (Ky.2003). We scrutinize the award of punitive damages in the framework of these guideposts.

---

4. For an in-depth explanation as to the policy furthering a *de novo* standard of review, see *Ragland v. DiGiuro*, 352 S.W.3d 908, 916–17 (Ky.App.2010).

5. Kentucky's punitive damages statutes, Kentucky Revised Statute (KRS) 411.184 and 411.186 also set forth "the level of punitive damages [Kentucky] will allow in different classes of cases and in any particular case [and they require] that the damages award be

reasonably necessary to vindicate the State's legitimate interests in punishment and deterrence." *Ragland*, 352 S.W.3d at 916 (quoting *Gore*, 517 U.S. at 568, 116 S.Ct. at 1595). R.O. does not contend, however, that the circuit court's punitive damages award violates state statute. Instead, R.O. solely asserts that the award is grossly excessive in violation of his federal due process rights. We focus our review accordingly.

## A. Degree of Reprehensibility

■ "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575, 116 S.Ct. at 1599. "This principle reflects the accepted view that some wrongs are more blameworthy than others." *Id.* In reviewing the fact finder's determination of reprehensibility, the Supreme Court has instructed us to consider whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm*, 538 U.S. at 419, 123 S.Ct. at 1521.

Applying the *State Farm* factors to this case, it is evident they do not weigh in R.O.'s favor. The harm caused was clearly physical rather than economic. R.O.'s conduct caused A.C. extensive emotional, mental, and physical harm, leading to self-mutilation and assaultive behavior, which altered A.C. for life. Additionally, by engaging in repeated sexual acts with A.C. when she was an eleven-year-old child, R.O. evinced a complete disregard for A.C.'s mental and physical well-being. Furthermore, with respect to the fourth factor, "a pattern of misconduct should be considered as adding to the reprehensibility of a tortfeasor's conduct." *McDonald's*, 309 S.W.3d at 300. Here, R.O. engaged in sexual acts with A.C. on several occasions over a span of many months. Finally, A.C.'s harm resulted from R.O.'s deliberate and intentional acts of sexual misconduct and, as found by the circuit court, the

finder of fact in this matter, R.O. acted with malice "as was implied from the outrageousness of his conduct." (Trial Order and Judgment at 2).

"The combination of these factors supports a finding of reprehensibility." *Ragland*, 352 S.W.3d at 918. In fact, as explained by our sister state, "[t]he sexual molestation of young children . . . is widely viewed as one of the most, if not the most, reprehensible crimes in our society." *State v. McKinniss*, 153 Ohio App.3d 654, 795 N.E.2d 160, 163 (2003). We find the degree of reprehensibility in this case to be significant.

## B. Ratio

Next, we must "consider the disparity between the harm suffered by the plaintiff[ ] and the amount of punitive damages awarded." *Phelps*, 103 S.W.3d at 54. This factor ensures the punitive damages "bear a reasonable relationship" to the compensatory damages. *Gore*, 517 U.S. at 580, 116 S.Ct. at 1601. Under this guidepost, we focus on both the reasonableness of the punitive damages award, and the ratio between the compensatory and punitive damages awarded. *See id.* at 580, 583, 116 S.Ct. at 1601–02.

■ We begin with a subjective, reasonableness review of the punitive damages award. *Ragland*, 352 S.W.3d at 920 (noting "this concept is an admittedly subjective analysis"). In this regard, the Supreme Court has repeatedly explained a "general concer[n] of reasonableness . . . properly enter[s] into the constitutional calculus." *Gore*, 517 U.S. at 583, 116 S.Ct. at 1602 (quoting *TXO*, 509 U.S. at 458, 113 S.Ct. at 2720 (quoting *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 18, 111 S.Ct. 1032, 1043, 113 L.Ed.2d 1 (1991))). As a means of evaluating the reasonableness of a punitive damages award, Kentucky uti-

lizes the "first blush" rule. *Ragland,* 352 S.W.3d at 919–20; *see also Sand Hill Energy, Inc. v. Ford Motor Co.,* 83 S.W.3d 483, 493 (Ky.2002) *vacated on other grounds by Ford Motor Co. v. Estate of Smith,* 538 U.S. 1028, 123 S.Ct. 2072, 155 L.Ed.2d 1056 (2003). Under the first blush rule, a punitive damages award is approaching, and may have crossed, the boundary into excessiveness:

> if it "causes the mind at first blush to conclude that it was returned under the influence of passion or prejudice on the part of the jury." [Citation omitted] Even if liberal, an award that does not shock the conscience or is not clearly excessive may not be set aside.

*Ragland,* 352 S.W.3d at 920 (quoting *CSX Transp., Inc. v. Moody,* 313 S.W.3d 72, 85 (Ky.2010)); *see also Haslip,* 499 U.S. at 18, 111 S.Ct. at 1043 (explaining a punitive damages award must not "jar one's constitutional sensibilities").

Here, the circuit court awarded A.C. $6,000,000.00 in punitive damage as a result of R.O.'s reprehensible act of engaging in sexual acts with an eleven-year-old child. In light of the severity of R.O.'s conduct and the compensatory damages award of $2,041,238.72, the punitive damages award does not, at first blush, strike this Court as excessive, nor does it "raise a suspicious judicial eyebrow." *Gore,* 517 U.S. at 583, 116 S.Ct. at 1603 (quoting *TXO,* 509 U.S. at 481, 113 S.Ct. at 2732 (O'Connor, J., dissenting)).

■ We next turn from a subjective, reasonableness analysis to an objective analysis by examining the ratio between the punitive damages award and the compensatory damages award. "The ratio is a[n] ... analytical tool ... used to put into an intellectual context our admittedly emotional reaction to [a punitive damages] award." *Ragland,* 352 S.W.3d at 920. In utilizing the ratio analysis, the Supreme Court recently reminded us that "the long-standing historical practice of setting punitive damages at two, three, or four times the size of compensatory damages, while not binding, is instructive." *Philip Morris USA v. Williams,* 549 U.S. 346, 351, 127 S.Ct. 1057, 1061–62, 166 L.Ed.2d 940 (2007) (internal quotation marks omitted). Further, while the Supreme Court has "consistently rejected the notion that the constitutional line is marked by a simple mathematical formula," *Gore,* 517 U.S. at 582, 116 S.Ct. at 1589, it has also reiterated that "few awards exceeding a single-digit ratio between punitive and compensatory damages ... will satisfy due process." *State Farm,* 538 U.S. at 425, 123 S.Ct. at 1513. Kentucky has faithfully and consistently traveled the path paved by the Supreme Court. *Compare Craig & Bishop, Inc. v. Piles,* 247 S.W.3d 897, 906 (Ky.2008) (finding constitutionally valid a 6:1 ratio between punitive damages and compensatory damages, respectively), *Farmland Mut. Ins. Co. v. Johnson,* 36 S.W.3d 368, 383 (Ky.2000) (7:1 ratio), *Owens–Corning Fiberglas Corp. v. Golightly,* 976 S.W.2d 409, 413–15 (Ky.1998) (1.5:1 ratio), and *McDonald's,* 309 S.W.3d at 299–300 (4.5:1 ratio) *with Ragland,* 352 S.W.3d at 922–23 (rejecting as constitutionally excessive an 18:1 ratio), and *McDonald's,* 309 S.W.3d at 299–302 (10:1 ratio constitutionally excessive); *see also Phelps,* 103 S.W.3d at 54–55 (11:1 ratio found constitutional because of "egregiousness of [defendant's] actions and the minimal amount awarded to compensate the victims").

Here, the circuit court awarded A.C. $41,238.72 in medical expenses and $2,000,000.00 for emotional distress, physical, and mental suffering. In total, A.C. received $2,041,238.72 in compensatory damages. The circuit court then awarded A.C. $6,000,000.00 in punitive damages. Hence, the ratio of punitive damages to

compensatory damages is less than 3:1. We find the punitive damages award to fall within constitutional parameters of the second guidepost. *See Gore*, 517 U.S. at 581, 116 S.Ct. at 1602 ("[E]ven though a punitive damages award of 'more than 4 times the amount of compensatory damages' might be 'close to the line,' it did not 'cross the line into the area of constitutional impropriety.'" (quoting *Haslip*, 499 U.S. at 23–24, 111 S.Ct. at 1046)); *Piles*, 247 S.W.3d at 906 (finding that a 6:1 ratio, while significant, was "not ridiculous").

R.O. contends the ratio between punitive and compensatory damages is 200:1 and, as a result, it is both shocking and far beyond the amount necessary to deter similar conduct in the future. While R.O. fails to show his mathematical calculation of the ratio, we surmise that R.O. considered as compensatory damages only the award of $41,238.72 for medical expenses.[6] However, as explained by our Supreme Court, compensatory damages "include the expense of cure, value of time lost, *fair compensation for physical and mental suffering* caused by the injury, and for any permanent reduction of the power to earn money." *Kentucky Cent. Ins. Co. v. Schneider*, 15 S.W.3d 373, 374 (Ky.2000) (emphasis added); *see also Cincinnati, N.O. & T.P. Ry. Co. v. Dority*, 292 Ky. 461, 166 S.W.2d 996, 997 (1942). R.O.'s argument is unavailing.

### C. Sanctions for Comparable Misconduct

 The third and final guidepost requires a "'broad legal comparison' [between] the punitive damages awarded and the civil or criminal penalties that *could be* awarded for similar misconduct." *McDonald's*, 309 S.W.3d at 300 (emphasis added) (quoting *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 440, 121 S.Ct. 1678, 1688, 149 L.Ed.2d 674 (2001)). Under this guidepost, we are compelled to "accord 'substantial deference' to legislative judgments concerning appropriate sanctions for the conduct at issue." *Gore*, 517 U.S. at 583, 116 S.Ct. at 1603 (quoting *Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 301, 109 S.Ct. 2909, 2934, 106 L.Ed.2d 219 (1989) (O'Connor, J., concurring in part and dissenting in part)).

In the case before us, R.O. was originally charged with four counts of first-degree sodomy, a Class A felony.[7] Kentucky Revised Statute (KRS) 510.070. If the Commonwealth had proceeded to trial and R.O. had been found guilty of first-degree sodomy, he could have been sentenced to prison for at least twenty, but not more than fifty, years, or for life, on each count. KRS 532.020(1)(d); *see also* KRS 510.070, Kentucky Crime Commission/LRC Commentary ("Such activity with a pre-pubertal child involves such great danger of lasting psychological damage that it deserves a severe penalty."). Further, R.O. actually pleaded guilty to four counts of sexual misconduct, a class A misdemeanor, which could have resulted in a maximum four-year prison sentence. KRS 510.140; KRS 532.020(2). Given the severity of the penalty the circuit court could have imposed on both the original and amended charges, we conclude there is no reason

---

**6.** Even these numbers yield a different ratio of approximately 145:1. However, we can find no other basis for R.O.'s assertion.

**7.** First-degree sodomy may be classified as either a Class A or Class B felony depending on the age of the victim and/or whether the victim received a serious physical injury. KRS 510.070(2). Here, because A.C. was under twelve (12) years of age at the time of the sexual acts, had R.O. been found guilty of first-degree sodomy, it would have been classified as a Class A felony. *Id.*

under the third guidepost to modify the punitive damages award.

In sum, after weighing the three guideposts set forth in *Gore*, we find the Calloway Circuit Court's $6,000,000.00 punitive damages award passes constitutional muster.

### IV. *Conclusion*

The Calloway Circuit Court's award of punitive damages was not grossly excessive so as to violate R.O.'s federal constitutional due process protections. We therefore affirm the circuit court's May 26, 2010 trial order and judgment.

ALL CONCUR.